The judgment below must be affirmed, with costs.

---

## ST. LOUIS & S. F. R. CO. v. RUTLAND.

(Circuit Court of Appeals, Sixth Circuit. May 6, 1913.)

### No. 2,311.

1. RAILROADS (§ 347*)—INJURIES AT CROSSINGS—TENNESSEE STATUTE REQUIRING LOOKOUT—APPLICABILITY.

Shannon's Code Tenn. §§ 1574–1576, which require every railroad company to keep some person on its locomotives always on the lookout ahead, and to take certain other precautions to prevent an accident in case any person, animal, or other obstruction appears on the track, and make a company failing to observe such requirements absolutely liable in case of any accident or collision resulting in injury to person or property, as construed by the Supreme Court of the state, do not apply to cases where it is impossible to comply with their requirements, or wholly impracticable consistently with the operation of the road, as in cases of switching operations, or where it is necessary in or about yards to push cars with the engine moving backwards, etc. Where a plaintiff's intestate was struck and killed at a street crossing by cars so being pushed, on a track

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

extending along a cross street extending from the terminal of one railroad to that of another, to which the cars, with their loads, were being transferred, it was a question of fact whether the situation was such as to make the statute applicable, and evidence as to the length of the transfer track, the extent of its use, the character of the country traversed, and the means or practicability of transferring the engine around, so as to return on the track if it preceded the cars, was relevant and admissible.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1124–1137; Dec. Dig. § 347.*]

2. RAILROADS (§ 350*)—INJURIES AT CROSSINGS—CONTRIBUTORY NEGLIGENCE.
    A person struck and killed at night, while walking along a street crossed by several railroad tracks near together, by cars which were being pushed backward, cannot be charged with contributory negligence as matter of law, where it did not appear that he could see the lights on the approaching cars, or how well the place was lighted, and there was a train passing on another track, which might have prevented him from hearing the one which struck him.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

3. RAILROADS (§ 350*)—INJURIES AT CROSSINGS—ACTION—DIRECTION OF VERDICT.
    Evidence that the negligence of a railroad company was the proximate cause of the killing of a person at a crossing in the night *held* not such as to warrant the direction of a verdict against it.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

4. NEGLIGENCE (§ 136*)—CAUSAL RELATION.
    Proof of defendant's negligence does not justify instructing a verdict for plaintiff unless the causal relation between negligence and injury is indisputable.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action at law by Elizabeth Rutland against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed.

The defendant below, commonly known as the "Frisco" Railroad, reaches Memphis from the east and there connects with the Rock Island. This connection is by a track running through the city of Memphis from the point where incoming Frisco trains are broken up, and extending to the Rock Island yards. This connecting track, belonging to the Frisco, at one point enters upon, and follows along, Tennessee street, and while thereon crosses Huling street. At and near this point, Tennessee street is practically given over to railroads, carrying also two main tracks and two or more side tracks of the Illinois Central. December 13, 1910, shortly before 6 p. m. (after dark), a Frisco engine was transferring, along this connecting track, three cars which had come in on the Frisco and were to go out on the Rock Island; the engine being behind, pushing the cars to the west, and itself running backward. Mr. Rutland, desiring to cross Tennessee street from the south, and accordingly walking along Huling street to the north, was struck by the first one of these freight cars, and was killed. His widow brought this action in the court below, alleging the diversity of citizenship requisite to jurisdiction, and recovered a verdict and judgment.

The railroad company's assignments of error present only three questions which seem to us to require consideration. They are: (1) Did the so-called

"statutory precautions" of Tennessee apply to the facts of this case, whereby the defendant's primary liability became indisputable, and contributory negligence ceased to be a bar, and could operate only in mitigation; or did the defendant's primary liability and the effect of contributory negligence depend upon common-law rules? (2) If the latter, then was defendant's negligence so clear as to justify an instruction to find for plaintiff? (3) Was Rutland's contributory negligence clear enough to require an instructed verdict for defendant? The sections of the Tennessee statute prescribing the nature and effect of the "statutory precautions" are given in the margin; also, a list of decisions of the Tennessee Supreme Court and of this court construing and applying these statutory provisions, and which we have reviewed.[1]

Fitzhugh & Biggs, of Memphis, Tenn. (W. F. Evans, of St. Louis, Mo., of counsel), for plaintiff in error.

Caruthers Ewing, of Memphis, Tenn., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1] The first question arises because the trial judge, believing that the statutory precautions did apply, charged the jury that defendant was liable, and left to the jury only the subjects of contributory negligence and of damages. The Tennessee statute is, in its terms, broad and general. It makes no exception whatever, and from its terms it would

---

[1] Shannon's Code:

"§ 1574. Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, and the brakes put down, and every possible means employed to stop the train and prevent an accident.

"§ 1575. Every railroad company that fails to observe these precautions, or cause them to be observed by its agents and servants shall be responsible for all damages to persons or property occasioned by, or resulting from, any accident or collision that may occur.

"§ 1576. No railroad company that observes, or causes to be observed these precautions shall be responsible for any damage done to person or property on its road. The proof that it has observed said precautions shall be upon the company."

Cases of Louisville & N. R. Co. v. Robertson, 9 Heisk. (Tenn.) 276 (1872); Haley v. Mobile & O. R. Co., 7 Baxt. (Tenn.) 239 (1874); Cox v. Louisville & N. R. Co., 1 Tenn. Cas. 475 (1875); East Tennessee V. & G. R. Co. v. Scales, 2 Lea (Tenn.) 688 (1879); East Tennessee V. & R. Co. v. Swaney, 5 Lea (Tenn.) 119 (1880); East Tennessee V. & G. R. Co. v. Selcer, 7 Lea (Tenn.) 558 (1881); East Tennessee V. & G. R. Co. v. Rush, 15 Lea (Tenn.) 145 (1885); Railway Co. v. Foster, 88 Tenn. 671, 680, 13 S. W. 694, 14 S. W. 428 (1890); Railway Co. v. Hicks, 89 Tenn. 301, 17 S. W. 1036 (1890); Patton v. Railroad, 89 Tenn. 370, 15 S. W. 919, 12 L. R. A. 184 (1890); Little Rock & M. Ry. Co. v. Wilson, 90 Tenn. 271, 16 S. W. 613, 13 L. R. A. 364, 25 Am. St. Rep. 693 (1891); Railroad v. Pugh, 95 Tenn. 419, 32 S. W. 311 (1895); Railroad v. House, 96 Tenn. 552, 35 S. W. 561 (1896); Railroad v. Dies, 98 Tenn. 655, 41 S. W. 860 (1897); Illinois Cent. R. Co. v. Clarkson, 28 A. & E. Ry. Cases, 459 (1899); Chattanooga Rapid Transit Co. v. Walton, 105 Tenn. 415, 58 S. W. 737 (1900); Louisville & N. R. Co. v. Martin, 113 Tenn. 266, 87 S. W. 418 (1904); Cincinnati, N. O. & T. P. R. Co. v. Holland, 117 Tenn. 257, 96 S. W. 78 (1906); Southern Ry. Co. v. Brooks, 125 Tenn. 260, 143 S. W. 62 (1911); Towles v. Southern R. Co. (C. C.) 103 Fed. 405 (Hammond, District Judge); Southern Ry. Co. v. Simpson (C. C. A. 6) 131 Fed. 705, 65 C. C. A. 563, and cases cited; Southern Ry. Co. v. Sutton (C. C. A. 6) 179 Fed. 471, 103 C. C. A. 51, and cases cited.

seem that, in every case where the cars strike anything on the track and where less than all the prescribed precautions are observed, the railroad company would be liable for the resulting damage;· but the Tennessee Supreme Court, construing the statute according to what it has thought the reasonable spirit and meaning, rather than according to the letter, has established a series of so-called exceptions—though, doubtless, these are not to be considered as real exceptions to the operation of the statute, but as instances beyond that operation. The general purport of these decisions seems to be that the statute must be applied to actual conditions in such a way as to save it from being a wholly unreasonable regulation; and it need not be said that in this matter of the construction and application of the Tennessee statute we are bound to follow that court.

One class of such exceptions comprises cases where the person injured has stepped upon the track too suddenly to permit the precautions to be operative, or, what is the same thing, has appeared upon the track under conditions indicating that he would not remain there long enough to become "an obstruction"; and this classification would seem to include the case of railroad employés whose duty takes them normally among and across tracks on which cars may be approaching. Another class (including, probably, all the adjudged cases not assignable to the first class) is made up of instances where the engine is not preceding the car or cars which are being moved, but where the engine is actually attached to and pushing one or more cars, or where cars are making a flying switch free from any engine, or where they have accidentally broken loose and are running alone. In discussing cases of this second class, the Supreme Court of Tennessee has sometimes described the case before it as involving operations "in and about yards" and sometimes as involving "switching operations"; but we cannot see that either of these things is the criterion. The rule of exclusion must be broad enough to cover both the first class and the second class. There cannot be one general reason for excluding sudden appearances on the track and another general reason for excluding switching operations; and it must follow that switching operations and movements in and about the yards are excluded, not because they are switching operations, or because they are in and about the yards, but because the switching operation or movement in the yards is within the general rule of exclusion; and whenever a case arises, novel on its particular facts, the inquiry must be whether it is within or without this general rule of exclusion.

That this is so not only seems to us clear enough ·as a matter of necessary reasoning, but we think it has been established, and the general rule fairly well formulated, by the Supreme Court of Tennessee. Detailed review of the cases in the margin is unnecessary. The most important were carefully considered by Judge Hammond in the Towles Case, supra, and by Judge (now Mr. Justice) Lurton in Simpson's Case, supra. We find nothing later invalidating these analyses. The criterion of exclusion is necessity—not absolute, but qualified. The precautions are not required, if their observance, though theoretically possible, is "utterly impracticable" consistently with operating

the railroad; but the railroad cannot predicate exclusion on "impracticability" which it unnecessarily causes or tolerates.

Accepting this as the broad criterion, how is it to be applied? If we try to apply the specific test, whether "in and about the yards," we find difficulties. This location was within the established "yard limits" of the railroad; but such limits, established by railroads as a matter of their own convenience in the application of their rules, often extend far beyond the actual yards, where tracks are numerous, and where switching and transferring are normal, and it is in this latter, or practical, sense that the Tennessee courts have used the phrase "in and about the yards." Case of Towles, supra. While this vicinity may be a yard in the latter sense from the standpoint of the Illinois Central, yet the Frisco has here only this single track, and the exemption appurtenant to yards has never been applied to such a situation. There are difficulties, also, if we try to apply the specific test, whether "a switching operation." This transfer was a step intermediate to the breaking up of the train on which the cars had come to Memphis, and the making up of a train on which they were to go out; but it was not the mere switching usual in such cases. It partook of the character of the through transportation to which it was incidental. It resembled delivery to an industrial siding; but, in that the delivery was to be to a co-operating railroad, it was not wholly equivalent to the decided case of industrial delivery. Railroad Co. v. Jones, 1 Tenn. C. C. A. 305.

So we are driven to abandon the specific tests and to the application of the broader rule. We conclude that the question whether, in this case, it was within the limits of practicable operation to have this engine precede these cars, was a question of fact, and it follows that all the conditions affecting that question of fact were pertinent. One of these conditions (as to which the record is silent) involves the distance from the beginning to the end of this transfer, and the character of the territory traversed, as indicating whether the distance and the incidental public dangers require those practices which attend through transportation on a through track, involving precautions, delays, expenses, and equipment which would be quite impracticable in handling traffic a short distance, where there was little public danger. Another condition (as to which the record is silent) involves the amount of traffic habitually moved over this track; as, e. g., it might be feasible for a Frisco engine, after it had delivered its cars, to be transferred around on the various Rock Island tracks, so that it could get back to its own track, if this was only occasional, but impracticable, if the requirement was very frequent.

Another condition is the state of things at both ends of this transfer track, as to turntables, Y tracks, or any other means that would permit an engine, leading in a string of cars, to get out again. As to this latter condition, defendant offered proof tending to show the lack, at the Rock Island end, of any means whereby the Frisco engine could get back on its own track, if it preceded the cars which it was delivering to the Rock Island, and so tending to show that if the freight cars preceded the engine, as they did and must, the statutory precau-

tions were impossible. The court refused to admit this evidence. It is true, the railroad could not create such a necessity (and so escape the statute) by failing to provide, at the Rock Island end of the transfer, either by itself or in association with the Rock Island, suitable and feasible means for the return of its engine, if such means were practicable; but whether the absence of such means was within the control of the Frisco Company, or was, judged by the standard of practicable operation, inherently necessary, could not be known until all the facts appeared. We think that the offered evidence should have been received, ·and complete inquiry made into all the facts attending this question of what was practicable. At the end of such inquiry, the conclusion may be one of fact for the jury, or the facts may permit only one inference. The present incomplete record does not justify a conclusion of law that it was practicable to have the engine precede the cars, or that an existing impracticability was avoidable by the railroad company.

[2] 2. The evidence did not justify instructing the jury that Rutland was guilty of contributory negligence. It does tend to show that, moving rapidly, he stepped upon this track when the approaching freight car was almost upon him, and that, if he had exercised any care, he could not have failed to see it coming. It may well be. that, if the thing had happened in the daytime, there would have been no escape from this inference. However, it happened in the night. If the car was close upon him, as seems probable, one of the lanterns on the car, the one which was hanging over the further eaves, would not have been visible, and the one on the top of the car, back more or less from the approaching end, might not have been visible. If the car was a mere shape in the dim light, the matter of its distance and the matter of its motion might easily be uncertain. The bell, and the noise of this engine and these cars, which ordinarily would challenge attention to their approach, may have been entirely drowned by the noise of the passing train on the Illinois Central track. Just how much the immediate area was lighted by the street light, and how much the headlight of the standing engine may have been blinding or confusing, are matters of doubt. Under the rule, too familiar to justify citing authorities, that a verdict cannot be instructed if there is any room for fair-minded men to doubt plaintiff's contributory negligence, the court below was justified in submitting this question to the jury.

[3] 3. If the evidence demonstrated with certainty that defendant's common-law negligence caused the injury, then the error in holding that the statutory precautions applied, and defendant was therefore liable, would be error without prejudice; but the evidence did not justify this conclusion. The defendant's evidence tended to show that the cars approached the crossing slowly, under control, with the bell of the engine ringing, with two lookouts with lanterns upon the car in advance, and taking every precaution which the circumstances permitted, and that Rutland must have walked or run in front of the car just the instant before it hit him. If this testimony, and all the inferences which might reasonably be drawn from it, can be accepted at their full value, the defendant would not be liable. There is no incon-

sistency between this conclusion and that reached in the preceding paragraph on the subject of contributory negligence, since the two conclusions are necessarily drawn from opposite points of view; one gives to the plaintiff the benefit of all reasonable inferences from the testimony in the case, and the other gives the same benefit to the defendant.

[4] Plaintiff also claims that the evidence established the absence of any flagman at this crossing at this time, and that the consequent violation of an existing city ordinance intended to operate for the protection of those using the streets constituted negligence, justifying the peremptory instruction for plaintiff which was given. It is not clear that this violation of the city ordinance was more than evidence of negligence (Railroad v. Ives, 144 U. S. 408, 418, 12 Sup. Ct. 679, 36 L. Ed. 485); but, even if it was negligence per se, it would not conclusively make out plaintiff's case. The causal relation, the inference that the negligence was the proximate cause of the injury, would be disputable. The ordinance did not require two flagmen. If one had been present at this time on the north side of Tennessee street, north of the track which was occupied by the Illinois Central passing train, he would have been at his post of duty, and the ordinance would have been fully satisfied; and yet he could not have been of any possible benefit or protection to Rutland, who first appeared coming from the south, after this passing train had blocked the crossing and cut off the view of any flagman who might have been on the north side.

4. Other errors alleged do not call for consideration.

The judgment is reversed, with costs, and the record remanded for new trial.