SAMUEL ASKEY, ADMINISTRATOR, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY ET AL., APPELLANTS.

FILED MAY 9, 1917. No. 19055.

1. **Railroads: CROSSINGS: DUTY OF TRAVELER.** It is the duty of a traveler on a highway, when approaching a railroad crossing, to look and listen for the approach of trains. He must look, where, by looking, he could see, and listen, where, by listening, he could hear; and if he fails without reasonable excuse to exercise such precautions he is guilty of negligence.

2. ———: ———: NEGLIGENCE. It is the duty of one approaching in an automobile a railroad crossing with which he is familiar, where his view is obstructed until he gets within a short distance of the railroad track, to keep his car under control and drive at a speed which will enable him to stop in time to avoid a collision after discovering a train. A speed which prevents such control under the circumstances is negligence as a matter of law.

3. ———: ———: CONTRIBUTORY NEGLIGENCE. Failure of the railroad company to ring the bell or blow the whistle as the train

approached the crossing, even though it may have been negligent, would not make the railroad company liable for the death of the automobile driver in a collision at the crossing, if he recklessly failed and neglected to have his car under control and by looking and listening at the proper time and place could have seen the approaching train in time to stop before reaching the track, but recklessly failed and neglected to do so, whereby there was a collision.

APPEAL from the district court for Harlan county: HARRY S. DUNGAN, JUDGE. *Reversed.*

*Byron Clark, E. E. Whitted* and *J. L. Rice,* for appellants.

*John Everson* and *J. G. Thompson, contra.*

HAMER, J.

This case comes here on appeal from a judgment rendered against the defendants in the district court for Harlan county. The plaintiff, as administrator of the estate of Thomas Askey, deceased, brought this action against the Chicago, Burlington & Quincy Railroad Company and Robert Cole, for the alleged negligent killing of Thomas Askey, plaintiff's decedent. A trial resulted in a verdict in favor of plaintiff for $5,000, and judgment thereon.

The only allegation of negligence contained in the petition in the instant case reads: "Plaintiff alleges that the defendants were guilty of gross carelessness and negligence in causing the death of said Thomas Askey, in this: Said train was running at a high speed, and no warning was given of its approach to said crossing of the highway, either by sounding the whistle or ringing the bell. And the track of said company, from a point about 300 feet to the west of said crossing to a point east of said crossing, curves to the south; and trees have been permitted to grow upon and over the north side of the right of way of said company between the curve and the crossing, so that deceased and other persons going south on said highway and crossing the track of said company from the north cannot see the track of said company except to the curve,

and said trees and undergrowth upon said right of way wholly obscure the trains approaching from the west until within about 20 or 30 feet of the rails of the track of said company."

The appellant contends that the evidence is insufficient to sustain the verdict. It shows that the accident occurred on June 18, 1913, at a wagon road crossing over the track of the railroad company west of Oxford, in Furnas county, Nebraska; that the wagon road in question passes over the track from the north to the south, and that the railroad at the crossing follows a practically east and west course. On the day in question the automobile being driven on this road from the north by the plaintiff's decedent was struck by an east-bound passenger train shortly after 6 o'clock in the evening, and the deceased was killed. At about 1 o'clock in the afternoon of the day when the accident occurred the deceased, together with his brother, Roy Askey, Frank and Ed Morris, and Charles Morris, went to Arapahoe, a town about 14 to 16 miles west of the home of the deceased. Arriving at Arapahoe, they went directly to a saloon, and were in and about the two saloons of the town the greater share of the time that they were there, probably about four hours. It is agreed that they had been drinking, but whether the deceased was intoxicated at the time of the accident is disputed.

It is contended that the bell was not rung nor the whistle sounded as the train approached the crossing. Upon the allegations of negligence on the part of the defendant, the evidence seems to be conflicting, and, the jury having found for the plaintiff, we must, for the purpose of this opinion, consider that the defendant was guilty of negligence which would have justified a recovery, unless the plaintiff's intestate was guilty of contributory negligence. We will therefore confine ourselves to that question.

The party left Arapahoe about 5 o'clock in the afternoon. They took with them three cases of beer and some lunch. They drove east upon a public road which runs

along the south side of the railroad, crossed the railroad at the crossing in question, drove north to the place occupied by Ed and Charles Morris, and left them there and a case of beer, turned around, and then, with decedent driving, with Frank Morris sitting beside him, and Roy Askey in the rear seat, they started south to cross the railroad, and thence to go west to Thomas Askey's home. In attempting to cross the track at this time, the automobile was struck by the locomotive, and Thomas Askey and Roy Askey were instantly killed. Frank Morris survived. Whether Thomas Askey was drunk or sober, he was required to exercise ordinary prudence at the crossing in either case.

West of the crossing, but not upon the right of way, is a large tree which overhangs the right of way. South and west of this had been a tree growing in the bottom of the creek's bed and distant from the track about 20 feet. This tree had been cut off, and is referred to in the testimony as the "stumped off" tree. Sprouts were growing from this tree and reached a little above the banks of the creek. West of this point the railroad curves to the south and goes in a southwesterly direction, and a train coming from the southwest could be seen from the crossing, or a point north of it not exceeding 48 feet, for a long distance, perhaps two or three miles. There was a dry creek that made a bend upon the right of way. There was a deep "hole" in the dry creek, and shrubbery and brush were growing out of it. It seems that the "hole" was only the bed of the creek. This dry creek came down in a southeasterly direction toward the railroad until it came in contact with the right of way, when it turned and went northeast. The brush which grew out of this dry creek was about two feet above the level of the rail. There was a stump of a tree in the bottom of the creek from which some sprouts had grown up. The railroad, following it west from the crossing, seems to have curved southwesterly at a distance of a little more than 300 feet west of the crossing. A train coming on the track from the west toward the crossing

might have been obscured by the tree and by the brush as to a person on the line of the crossing and more than 48 feet north of the crossing, but after the automobile, which was going south, got within 47 or 48 feet of the railroad track a person could see along the track in a westerly direction for a distance of from 300 to 350 feet, and by looking southwesterly along the track a train might be seen two miles away or further. The automobile was within 28 feet of the track when it seems to have slid and to have changed its direction so that it ran a little more westerly. This suggests with great force that the automobile was running so fast that it ran onto the track in spite of the driver. All the witnesses agree that the track was open to view toward the west for a distance of 300 feet or more when entered by the roadway at the north side, and from a point not to exceed 48 feet north of the crossing; also that the country is level and the track slightly higher than the surrounding country. Frank Morris, the surviving member of the party, testified on his direct examination: "A. Well, you can stand inside of the right of way, I think about three feet, and you can see a train when it is about 300 feet west of the crossing." The automobile was struck squarely in the center. The speed of the train was shown by the speed recorder to be 37 miles an hour. The deceased lived in the neighborhood. He had been over the crossing itself four times on the morning of the day that he was killed. Approaching the crossing approximately the same rate of speed was maintained that had been maintained elsewhere on the road. There was no slowing down. The evidence showed that 28 feet north from the north rail there were marks in the road showing that the automobile had skidded, and that from that point on toward the track it had not followed the usual traveled course, but had turned westerly and had gone on to the crossing planks near the west side. If the curved track of the automobile in the road indicates that at this point the brakes were applied to the automobile and that deceased endeavored to stop, then the accident occurred

because the deceased approached the crossing at a rate of speed too high to permit him to stop after he saw the train.  He ought to have been able to stop in less than 28 feet.  These curved automobile tracks are significant that he tried to stop, but if he did not attempt to stop then he must have driven about 47 or 48 feet from the point where the train might first have become visible to him clear up to the track without making an effort to stop.  The train would, at the rate of 40 miles an hour, cover 300 feet in a little more than five seconds, consequently, it was in plain view at a point on the highway within 47 or 48 feet of the place of collision for fully five seconds, and perhaps six, before reaching the crossing, which offered deceased ample time to discover the danger and to stop if he had endeavored to do so, and had had his car under control.  The speed of his car must have prevented him from stopping.

The witness, Frank Morris, in his testimony on behalf of the plaintiff, described the accident as follows:  "A.  Well, as we started to come up (to) the right of way, first, I looked down the track east.  We had some crackers there, and I reached down and picked up the crackers, and I was looking right west like this (indicating), and just as I raised up, Tom says, 'My God, there is a train!' and just then I seen it; just as he said that I seen the train.  The last I seen of Tom he was reached over like this (indicating attitude), and I was jumping out of the car."

"It is the duty of such traveler on a highway, when approaching a railroad crossing, to look and listen for the approach of trains.  He must look, where, by looking, he could see, and listen, where, by listening, he could hear."  *Rickert v. Union P. R. Co.*, 100 Neb. 304.  The evidence wholly fails to show the performance of this duty.  During all the time the train was moving eastward from a point 350 feet west of the crossing, or thereabouts, it was in full view of the occupants of the automobile if they had looked.

It is the duty of one operating an automobile and approaching a crossing with which he is familiar, and where

the view is obstructed until near the track, to drive his car at such speed that he can stop it after discovering a train in time to avoid a collision. The high speed which prevents such control at a railroad crossing is negligence as a matter of law. *Gage v. Atchison, T. & S. F. R. Co.*, 91 Kan. 253; *Corley v. Atchison, T. & S. F. R. Co.*, 90 Kan. 70; *Earle v. Philadelphia & R. R. Co.*, 248 Pa. St. 193. This rule springs from the rule which recognizes a railroad crossing as a place of danger and requires one, knowing he is approaching it, to look and listen before attempting to cross. Control of the vehicle is essential. The decedent either did not look for a train at a time when he could have saved himself as he was approaching the crossing, or he was driving at a rate of speed which made his discovery of the train unavailing. The failure to do these things is more than a slight negligence as a matter of law. *O'Toole v. Duluth, S. S. & A. R. Co.*, 153 Wis. 461; *Dohr v. Wisconsin C. R. Co.*, 144 Wis. 545.

In *Gage v. Atchison, T. & S. F. R. Co.*, 91 Kan. 253, the court said: "Ordinary prudence requires him to control his car so that he could use his faculty of sight near the track where it would be of most benefit to him, and so that he could stop before going on the track if a train should appear within the distance he was able to see."

In *Avery v. New York, O. & W. R. Co.*, 205 N. Y. 502, the trial court was requested by the defendant to charge the jury: "It is the duty of the person riding a bicycle upon a highway, in approaching a railway crossing, to keep the bicycle under complete control and be prepared to stop." This request was refused, and the court of appeals said: "I think the ruling was grave error. * * * The rider of a bicycle should have it under full control." The opinion cites *Cullen v. Delaware & Hudson Canal Co.*, 113 N. Y. 667, *Wallace v. Central V. R. Co.*, 138 N. Y. 302, and other cases.

Applying the rule here laid down to the instant case, the decedent should have looked and listened, and should have had his automobile under control, and this he should

Askey v. Chicago, B. & Q. R. Co.

have done if neither the bell was rung nor the whistle sounded. Also along the same line are the following: *Glick v. Cumberland & W. E. R. Co.,* 124 Md. 308; *Northern P. R. Co. v. Tripp,* 220 Fed. 286; *Turck v. New York C. & H. R. R. Co.,* 95 N. Y. Supp. 1100.

In the sixth instruction the court said: "If from the evidence in this case you find that Thomas Askey on approaching the crossing did not look and listen for the train, or exercise such precaution as a person of ordinary prudence and judgment, under similar circumstances and conditions as are shown by the evidence existed at the crossing in question, would use, such facts would be evidence of contributory negligence, and if from the evidence you find that Thomas Askey was guilty of contributory negligence, and that such contributory negligence was the approximate and efficient cause of his death, then and in that event the plaintiff could not recover, and your verdict should be for the defendants."

In the above instruction the jury are, in effect, told that one approaching a railroad crossing is not necessarily required to look and listen. The instruction as it was given was clearly wrong. It told the jury that Thomas Askey might look and listen for the train, or that he might exercise such precaution as a person of ordinary prudence and judgment would exercise under similar circumstances. It was the duty of Thomas Askey on approaching the crossing to look and listen for the train, and exercise such precaution as a person of ordinary prudence and judgment under similar circumstances and conditions would exercise.

In *Hunt v. Chicago, B. & Q. R. Co.,* 95 Neb. 746, it is held: "The rule that, if negligence on the part of a person injured contributed to the injury, he is not entitled to recover therefor applies as well where the injury is to plaintiff's property as to where it is to his person, and in cases of contract as well as those of tort."

The court refused to give instruction No. 12, requested by the defendants, as follows: "The omission of a rail-

101 Neb.—18

road company to sound the whistle or ring the bell of its engine when approaching a public crossing does not of itself make out a case of negligence against the railroad company or those operating the engine; and, even if the whistle is not sounded and the bell not rung, yet if the traveler on the highway by exercising ordinary care in looking and listening for the train, or by traveling at a prudent and proper rate of speed, could prevent a collision, but does not do so, he cannot recover for injuries received in the collision, notwithstanding the whistle was not sounded or the bell not rung."

The district court failed to properly submit to the jury the question of decedent's contributory negligence.

The judgment of the district court is reversed and the cause remanded.

REVERSED.

MORRISSEY, C. J., dissents.