# CHARLESTON.

THOMAS H. ROBERTSON *v.* MONONGAHELA POWER & RAILWAY COMPANY

(No. 5255)

Submitted May 19, 1925. Decided June 9, 1925.

1. RAILROADS—*Traveler Must Stop, Where Circumstances Require it.*

    In addition to the duty to look and listen in both directions, one approaching a railroad crossing must stop where the circumstances of the case require it. (p. 359).

2. SAME—*Traveler Must Exercise Care Proportionate to Danger.*

    A railroad crossing is of itself a proclamation of danger, and a traveler about to cross the track must always exercise care proportionate to the danger; as the danger increases more vigilance is required. (p. 359).

3. SAME—*Traveler Must Exercise Care to Select Position for Making Effective Observation.*

    The duty to look and listen before entering upon a rail-

road crossing requires the traveler to exercise care to select a
position from which an effective observation can be made.
(p. 360).

4.   SAME—*Automobile Driver Must Have Car Under Control,
Where View is Obscured.*

One driving an automobile toward a railroad crossing
which he can see but where his view of the track on either
side is obscured, must have his car under such control that
he can stop before reaching a zone of danger in case a train
is approaching; and if he fails without reasonable excuse
to observe such precaution, he is guilty of negligence.   (p.
361).

, Error to Circuit Court, Harrison County.

Action by Thomas H. Robertson against the Monongahela
Power & Railway Company.   Judgment for plaintiff, and de-
fendant brings error.

  *Judgment reversed; verdict set aside; new trial awarded.*

*Steptoe & Johnson, Leo P. Caulfield,* and *James M. Guiher,*
for plaintiff in error.

*E. G. Smith,* for defendant in error.

MILLER, JUDGE:

Plaintiff brought this action to recover damages for per-
sonal injuries and for injury to his automobile, due to a col-
lision between the automobile and an interurban electric
railroad car operated by defendant, at a country highway
crossing.   From a judgment against it, defendant prosecutes
the present writ of error.

The declaration charges that, "the said passenger car then
and there ran, at a moderate rate of speed, but negligently
and suddenly and without warning, in front of said automo-
bile from behind said embankment concealing it from plain-
tiff's view until upon said crossing, said embankment not
preventing the noise of its whistle or bell from reaching
plaintiff in time to have prevented the collision had either
been sounded, but, through negligence of defendant neither
were sounded;" and it is also alleged that defendant failed
"to provide gates, a watchman, flagman, whistle, gong or

electric bell at said crossing to warn persons traveling upon and over said crossing of an approaching car.''

There was no evidence tending to show a duty on the part of defendant to maintain gates, a watchman, flagman, whistle, gong or bell at the crossing; and the trial court properly instructed the jury to disregard the charge of negligence on that account.

The only question of negligence on the part of defendant submitted to the jury was its failure to give notice of the approach of its car at the crossing, by bell or whistle. On this question the evidence was conflicting; and the jury found, in answer to an interrogatory submitted by the court, that the accident was proximately caused by the motorman's failure to sound the whistle.

The main question to be determined is: Was plaintiff guilty of contributory negligence. He was driving toward the crossing on a paved roadway 14 feet wide, down a 7.87 per cent. grade, his view of the approaching car being obscured by a hill rising in the obtuse angle between the highway and the railroad track, on his right and to the left of the trolley car. The crossing was plainly marked by a large white ''X'' crossing sign, which plaintiff could see for a distance of several hundred feet. His own testimony is that he was driving a Ford roadster, not going fast, but how fast he did not know, having no speedometer; that he was coasting, with the clutch out, and without brakes, until he saw the interurban car coming out of the cut, about two or three feet from the paved highway; that at that time he was between thirty and forty feet from the crossing; that he immediately put his foot brakes on, and began to skid, and skidded until he struck the car. He says that he skidded about thirty or thirty-five feet. The road was dry, and the day clear, about noon. Plaintiff says he had his car under control; but when asked why he skidded into the car, he answered: ''Because I did not have sufficient distance to stop in.'' He saw the crossing when he was several hundred feet away; and says he was looking for a car. He insists he did not see the car until it was within two or three feet of the paved road at the crossing; and when asked if he could

have seen it before that if he had looked, his answer was: "I do not think so, no sir." It appears that the pavement on the crossing is somewhat wider than on the highway proper.

There is some conflict in the evidence in regard to the speed of plaintiff's automobile just before and at the time of the collision; but little as to the actual physical features, railroad, and the location of the hill obstructing plaintiff's view of the approaching car. A number of photographs were identified and introduced in evidence, in connection with both plaintiff's and defendant's evidence. Plaintiff himself was examined with reference to these photographs, and testified as to Photograph No. 1, that he could see the same distance shown by the photograph. This picture was taken from a distance of 75 feet from the crossing, the camera sitting in the middle of the highway with the lens at the height of plaintiff's eyes when seated in his automobile, and showed, according to the testimony of the photographer and others, that the trolley car could plainly be seen for a distance of 115½ feet from the crossing, and at any point between there and the crossing. With reference to Photograph No. 2, taken at a distance of 50 feet from the crossing and showing the street car 500 feet away, plaintiff said he did not see the car as shown therein; but when asked if he saw it when he was fifty feet from the crossing, he answered: "I judge not. I don't know. * * * I would say I could not see the car sooner than I put my foot brake on, whatever distance that was from the crossing." He admits he could see the top of the car before the motorman could see him. The street car was 45 feet 6 inches in length and weighed 55,000 pounds. It was running about 5 to 7 miles an hour, and was stopped on the crossing. Plaintiff's automobile evidently struck the car near the front steps on the left side, and after both had stopped it was sitting parallel to the car headed in the direction from which the car came. Plaintiff says: "Well we came together on the crossing, and I believe I hit the car; that I am not positive of."

To relieve him of the charge of contributory negligence, what was plaintiff's duty on approaching the crossing, under

the facts testified to and admitted by him, and the uncontroverted evidence of the surrounding circumstances and physical conditions? While we are not committed to the rule that one approaching a railroad crossing must in all cases stop, "our decisions and the decisions everywhere are to the same effect that he must if necessary stop, and look and listen in both directions." *Cline* v. *McAdoo,* 85 W. Va. 524; citing several of our cases. *Robinson* v. *Railway Co.,* 90 W. Va. 411, 416; 3 Elliott on Railroads, (3rd ed.), sec. 1663, and cases cited.

But in this case, whether or not plaintiff should have stopped, it appears that he did not have his automobile under such control that he could stop when the danger became apparent. He insists he did not see the car because he could not see. Therefore, greater vigilance was required of him. If he could not from a distance see the track leading from the crossing, it was his duty to look from a point where looking would be effective. In *Cavendish* v. *Railway Co.,* 95 W. Va. 490, it was said: "Where the crossing is hazardous the traveler must use more than usual caution in entering upon it. The presence of the railroad tracks is in itself a warning of danger. A rule based on reason is that the vigilance of the traveler must be in proportion to the danger, and as the danger increases he must be more vigilant to employ his faculties and senses to avoid it. Beech on Contributory Negligence (3d ed.), sec. 193, p. 289. And where the track is obstructed by cars or otherwise, interfering with sight or hearing, extra caution should be observed." The greater the degree of danger, the greater is the measure of duty imposed. 8 Thompson on Negligence, (2 Sup.), sec. 1610; 2 Shear. & Red. on Neg. (6th ed.) sec. 478, and cases cited. How can plaintiff here claim that he observed extra caution, when he admits he skidded into the trolley car, a distance of at least thirty feet?

In 3 Elliott on Railroads, (3rd. ed.), section 1661, it is said: "The duty to look and listen requires the traveler to exercise care to select a position from which an effective observation can be made. The mere fact of looking and listening is not always a full observance of the duty incumbent

upon the traveler, for he must exercise care to make the act of looking and listening reasonably effective, and must usually continue to be on the lookout and exercise his faculties until he has crossed.'' See, also, 22 R. C. L. 1030; Babbitt on Automobiles, (3rd ed.), sec. 1847; Huddy on Automobiles, (7th ed.), sec. 674; *Washington Southern Ry. Co.* v. *Zell,* 118 Va. 755; *Askey* v. *C. B. & Q. Ry. Co.,* 101 Neb. 266, 162 N. W. 647.   In the case last cited it is said: ''It is the duty of a traveler on a highway, when approaching a railroad crossing, to look and listen for the approach of trains.   He must look where by looking he could see, and listen where by listening he could hear; and if he fails without reasonable excuse to exercise such precautions, he is guilty of negligence.''   And in *Wehe* v. *A. T. & S. F. Ry. Co.,* 97 Kans. 794. L. R. A, 1916-E. 455, it was held: ''A driver of an automobile can not recover damages for injuries to himself and his machine where he approaches a railway track at a place at which he can not see along the track until his automobile is in a place where he will be struck by a passing engine or cars, and does not stop his car to ascertain whether or not there is danger, although he listens before going into the place of danger and does not hear any engine or cars coming.''   To the same effect see *Sanford* v. *Grand Trunk Western Ry. Co.,* 190 Mich. 390; *N. Y. Cent. Ry.* v. *Maidment,* 168 Fed. 21, 93 C. C. A. 413, 21 L. R. A. (N. S.) 794; *Glick* v. *Railway Co.,* 124 Md. 308; Babbitt on Automobiles, (3rd ed.) sec. 1849.  In the Federal case just cited, it was said: ''The duty of an automobile driver approaching tracks where there is restricted vision to stop, look and listen, and to do so at a time and place where listening will be effective, is a positive duty, and these safeguarding steps the plaintiff failed to take.   He stopped where stopping would serve no purpose, and failed to stop where stopping would have disclosed danger.   He made chance, and not sight, the guaranty of his safety.''

If plaintiff did not hear the car coming and could not see the track because of the hill obscuring his vision it was his duty to stop or to slow up at some point before entering the track.   In the hands of an experienced and careful driver, an automobile is susceptible of almost perfect control, and

may be slowed up or stopped at any point selected by the driver, and is safe when standing within a very few feet of a railroad track. Here the uncontroverted evidence is that from a place of safety plaintiff could have seen the track in either direction for several hundred feet. The trolley car was traveling at a very slow rate.

But it appears that plaintiff did not have his automobile under such control as to enable him to stop within thirty feet or more, at the time he says he could first see the approaching car, taking into consideration only his own testimony. If one is looking out for the approach of a car that may be coming from behind an obstacle near the crossing, he must have his vehicle under control. Control is essential. The driver knows the exact point where the danger may appear; and unless his error is one of judgment, he is guilty of contributory negligence if he skids onto the track after discovering the train or car. In *Askey* v. *Railway Co., supra,* the court said: "It is the duty of one operating an automobile and approaching a crossing with which he is familiar, and where the view is obstructed until near the track, to drive his car at such speed that he can stop it after discovering a train in time to avoid a collision. The high speed which prevents such control at a railroad crossing is negligence as a matter of law." While we can not say that plaintiff in this case was familiar with the crossing where he was injured, he could and did see it for a long distance, and was bound to take notice of the possible danger. In *Gage* v. *A. T. & S. F. Ry. Co.,* 91 Kans. 253, Ann. Cas. 1915-B. 410, where the plaintiff was within fifteen feet of the track when he saw the approaching train about three hundred feet away, and used all appliances for stopping his car, but skidded on the slippery ground onto the track where his engine stopped, and he was struck by the train, he was held guilty of contributory negligence; the court in the opinion saying: "He was in a place of safety when he saw the train had he been in control of his car, but he was driving at such speed that when he applied the brakes the momentum of the car carried it up the slight incline and upon the railway track before it stopped. Ordinary prudence

required him to control his car so that he could use his faculty of sight near the track where it would be of most benefit to him, and so that he could stop before going on the track if a train should appear within the distance he was able to see.'' In that case plaintiff testified he was driving about ten miles an hour; the highway was wet, and plaintiff's vision was so obscured by rain and snow that he could see only about three hundred feet away. 2 R. C. L. 1191; 22 Id. 1018-1019; Berry on Automobiles, (4th ed.), sec. 780; Babbitt on Automobiles, (3rd ed.), sec. 1853; Huddy on Automobiles, (7th ed.), sec. 674; *Sanford* v. *Railway Co., supra; Glick* v. *Railway Co., supra; Beckwith* v. *Railway Co.,* 120 Wash. 91; *Puhr* v. *Railway Co.,* 171 Wis. 154, 14 A. L. R. 1334; *Dey* v. *United Railways Co.,* 140 Mo. App. 461; *Christman* v. *So. Pac. Co.,* 38 Cal. App. 196.

It is entirely clear from his own testimony that at a place of safety thirty or more feet from the crossing plaintiff saw the approaching car in time to have stopped and avoided the accident if he had had his car under control, and it is equally clear that he did not have the machine under such control as would enable him to stop within the safety zone. Under such circumstances he was guilty of contributory negligence precluding recovery. The trial court should have instructed the jury to find for defendant, as requested.

The judgment will be reversed, the verdict of the jury set aside, and a new trial awarded defendant.

*Reversed; verdict set aside; new trial awarded.*