**CHESAPEAKE & O. RY. CO. v. WAID.**

Circuit Court of Appeals, Fourth Circuit.

April 10, 1928.

No. 2678.

1. **Railroads ⬤⟿350(13)—Contributory negligence of automobile driver struck by train at crossing held for jury.**

In action by automobile driver for injury, sustained when automobile was struck by train

at crossing, contributory negligence of plaintiff *held* for jury.

2. **Negligence ⬤⟿136(9)—Contributory negligence is question for court only where facts are such that all reasonable men must draw same conclusion from them.**

It is only where facts are such that all reasonable men must draw same conclusion from them that question of contributory negligence becomes one for court.

3. **Appeal and error ⬤⟿927(7)—In reviewing judgment for plaintiff, after refusal to direct verdict for defendant, appellate court must accept plaintiff's testimony as true.**

In reviewing judgment for plaintiff in action for personal injuries sustained in collision of automobile with train, plaintiff's testimony must be accepted by appellate court in determining whether he was guilty of contributory negligence as matter of law.

4. **Jury ⬤⟿34(2)—Under Constitution, plaintiff is entitled to have questions regarding conditions prevailing at time of collision between train and his automobile settled by verdict of jury and not by observations of judge.**

Under Constitution, plaintiff is entitled to have questions regarding conditions prevailing at time of collision of train with plaintiff's automobile settled by verdict of a jury and not by observations of judge.

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; George W. McClintic, Judge.

Action by John Waid against the Chesapeake & Ohio Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

C. W. Strickling, of Huntington, W. Va. (Douglas W. Brown, C. N. Davis, and Fitzpatrick, Brown & Davis, all of Huntington, W. Va., on the brief), for plaintiff in error.

Ashton File, of Beckley, W. Va., and A. G. Fox, of Bluefield, W. Va. (File, Goldsmith & Scherer, of Beckley, W. Va., and Sanders, Crockett, Fox & Sanders, of Bluefield, W. Va., on the brief), for defendant in error.

Before PARKER and NORTHCOTT, Circuit Judges, and WEBB, District Judge.

PARKER, Circuit Judge. This is the second time that this case has been before us. On the former hearing we held that there was error in directing a verdict for defendant, and granted a new trial. 14 F.(2d) 90. On the new trial there was a verdict and judgment for plaintiff, and defendant now complains because the court did not again direct a verdict in its favor. The evidence on the second trial was substantially the same as upon the first, except that there was addition-

al evidence as to the darkness prevailing at the time of plaintiff's injury. The facts were fully stated in the former opinion (14 F.[2d] 90 and 91), and need not be repeated. We would affirm the judgment on the ground that our former opinion is the law of the case, but for the contention that it conflicts with the more recent decision of the Supreme Court in B. & O. R. R. Co. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. ——. We shall examine this contention.

In the Goodman Case, the deceased was struck at a crossing in the daytime, by a train running at the rate of 60 miles an hour. It appeared that he drove upon the crossing from behind a building, which obstructed his view of the on-coming train, and that, before going upon the track, he did not stop or look. The holding of the court was that the failure to stop and look under such circumstances was contributory negligence as a matter of law, requiring the direction of a verdict for the defendant. This rule had been established as the law in this circuit by repeated decisions of this court. Neininger v. Cowan (C. C. A. 4th) 101 F. 787; Dernberger v. B. & O. R. Co. (C. C. A. 4th) 243 F. 21; Southern Ry. v. Priester (C. C. A. 4th) 289 F. 945. In the Neininger Case, it was held that one who drove upon a railroad crossing from behind an obstruction without stopping to look or listen would be held guilty of contributory negligence as a matter of law. In the Dernberger Case, the same was held as to one traveling in a wagon, who looked 150 feet from the crossing, but failed to look again after his view had been obstructed by weeds and underbrush growing near the track. In the Priester Case and in the very recent case of Auvil v. Western Md. R. Co. (C. C. A. 4th) 19 F.(2d) 30, we held that one who goes upon a railroad track in front of an approaching train, which he might have seen or heard, is guilty of contributory negligence barring recovery. And in the recent case of Atlantic Coast Line R. Co. v. McLeod (C. C. A. 4th) 11 F.(2d) 22, we held the same as to one who went on the track in the nighttime in front of a train which had its headlight burning, even though he testified that he looked and did not see it approaching, as we thought that such testimony had no probative value under the circumstances of that case.

None of these cases, however, has any application to the case at bar, nor do we think that the decision in the Goodman Case is applicable. That case dealt with a train running in the daytime at the rate of 60 miles an hour, which deceased might easily have seen if he had stopped and looked in the direction from which it was coming. This deals with cars pushed by an engine in the gloom of gathering darkness without the display of warning lights or the giving of proper signals. In that case the evidence showed that the injured person failed to look. In this there is evidence that he looked but failed to see the approaching cars, and his failure to see them is explained by the gathering darkness and the absence of lights on the leading car.

Of course, there is much testimony in contradiction of the testimony offered by plaintiff; but, as we said in our former opinion, we are not here to weigh evidence. On a motion to direct a verdict for defendant, the rule is well settled that the evidence must be viewed in the light most favorable to the plaintiff. Union Pac. R. Co. v. Huxoll, 245 U. S. 535, 539, 38 S. Ct. 187, 62 L. Ed. 455; Mims v. Reid (C. C. A. 4th) 286 F. 900. And, viewing it in this light, we have no doubt that the queston of contributory negligence was one for the jury. Plaintiff testified that, as he passed the corner of the Terminal building, 70 feet from the track, he looked in the direction from which the cars were coming "and did not see any train or any lights or anything, and did not hear any whistle or bell or anything." He testified that he then gave his attention to the other side of the crossing, where an engine was standing with its headlight casting its rays of light in his direction; that he had to determine whether this engine was standing still or moving, and decided that it was standing still; that he then gave his attention to the crossing, which was a narrow "affair," made of boards, and very rough; and that, just as he was entering upon the crossing, he was struck by the on-coming cars. He testified that he was traveling at the rate of 6 or 8 miles an hour, and, as the District Judge has pointed out, this means that not more than 6 or 8 seconds elapsed from the time when he looked at the corner of the Terminal building and the time when he was struck. He might have seen the approaching cars if he had looked a second time in the direction from which they were coming before going upon the track. But we think that he should not be held guilty of contributory negligence as a matter of law because he did not look twice in the same direction within 6 seconds. The engine to his left demanded a share of his attention. The crossing itself demanded a share. Under such circumstances, is he to be held guilty of negligence as a matter of law because of his failure to see a danger which, if his evidence be believed, he looked for once only 6 seconds

before he was struck, and failed to see because of defendant's negligent failure to display the lights and give the signals which every traveler along the highway had a right to expect? We think not. As said by the late Judge Woods in the Zanzinger Case (C. C. A.) 269 F. at 554:

"How intently and how constantly, or how often, he should listen and look in the exercise of the prudence of a reasonably careful man, depends upon all the circumstances; and one of the circumstances is the rightful expectation of the traveler that the railroad will perform the duty required by law and by ordinary care of warning him by sounding a locomotive bell or whistle on approaching a crossing. Whether a traveler on the highway has looked and listened as a man of ordinary prudence would is generally a question for the jury."

And, to quote again what was said by Mr. Justice Lamar in Grand Trunk Ry. v. Ives, 144 U. S. 408, 417, 12 S. Ct. 679, 682, 36 L. Ed. 485, quoted with approval by Chief Justice Fuller in Baltimore & O. R. Co. v. Griffith, 159 U. S. 603, 611, 16 S. Ct. 105, 108 (40 L. Ed. 274), and by Mr. Justice Harlan in Texas & P. R. Co. v. Gentry, 163 U. S. 353, 368, 16 S. Ct. 1104, 1109 (41 L. Ed. 186):

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case, may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court."

In Louisville & N. R. Co. v. Summers (C. C. A. 6th) 125 F. 719, the court held that an injured person who looked for a train some distance from the track would not be held guilty of contributory negligence as a matter of law because he did not look again before going upon the crossing. What was said by Judge Severens in that case is applicable here:

"But we think that, conceding the general rule of the duty to stop and look and listen, it is not, as an entirety, applicable to all circumstances; nor is there any more definite statement of the measure of time, or the intensity and particularity of the attention which must be given, than that the caution a reasonably prudent man would give, in the circumstances, must be exercised. Nor can the distance from the track at which the precaution is to be taken be fixed by any more definite test. It might have been thought by the jury that the decedents took such reasonable precaution in stopping when they did to look and listen, and were justified in being satisfied, by what they observed, that the passage was clear of danger. * * * And the jury might also have thought that the degree of caution which they were bound to exercise was in some measure affected by their supposition that the railroad company would observe its duty, in that locality, of blowing the whistle or ringing the bell of the engine in running through the town. We do not mean to say that such a supposition may be absolutely relied upon as an excuse for not taking due precaution, but it would seem to be an element to be taken into account in considering the reasonableness of the conduct of the decedents, and that the railroad company ought not to complain thereof."

In Lehigh Valley R. Co. v. Kilmer (C. C. A. 2d) 231 F. 628, 635, certiorari denied 242 U. S. 627, 37 S. Ct. 13, 61 L. Ed. 535, the court held, in an opinion by the late Judge Rogers, that:

"The question under all the circumstances was a proper one for the jury. The plaintiff stopped, looked, and listened if he told the truth, and whether he told the truth was for the jury. The question whether he exercised as much care in looking and listening as he should have done was also for the jury. The question whether, having stopped and looked and listened 145 feet from the crossing without seeing or hearing anything, ordinary care and prudence required him to stop again before going upon the tracks, and whether he could have been in the exercise of due care in looking and listening, when he neither saw nor heard this train until he got upon the track, were under all the circumstances questions of fact for the jury."

On the same point, see, also, Penn. R. Co.

v. Cutting (C. C. A. 2d) 5 F.(2d) 936, 938.

In St. Louis & S. F. R. Co. v. Rutland (C. C. A. 6th) 207 F. 287, certiorari denied 231 U. S. 755, 34 S. Ct. 323, 58 L. Ed. 468, deceased was struck at a crossing by cars pushed by an engine in the nighttime. The question of contributory negligence was held for the jury, and, in view of the similarity of conditions to those in the case at bar, what was said by Judge Denison on the subject is pertinent, viz.:

"The evidence did not justify instructing the jury that Rutland was guilty of contributory negligence. It does tend to show that, moving rapidly, he stepped upon this track when the approaching freight car was almost upon him, and that, if he had exercised any care, he could not have failed to see it coming. It may well be that, if the thing had happened in the daytime, there would have been no escape from this inference. However, it happened in the night. If the car was close upon him, as seems probable, one of the lanterns on the car, the one which was hanging over the further eaves, would not have been visible, and the one on the top of the car, back more or less from the approaching end, might not have been visible. If the car was a mere shape in the dim light, the matter of its distance and the matter of its motion might easily be uncertain. The bell, and the noise of this engine and these cars, which ordinarily would challenge attention to their approach, may have been entirely drowned by the noise of the passing train on the Illinois Central track. Just how much the immediate area was lighted by the street light, and how much the headlight of the standing engine may have been blinding or confusing, are matters of doubt. Under the rule, too familiar to justify citing authorities, that a verdict cannot be instructed if there is any room for fair-minded men to doubt plaintiff's contributory negligence, the court below was justified in submitting this question to the jury."

See, also, B. & O. R. Co. v. Reeves (C. C. A. 6th) 10 F.(2d) 329, 330; Lehtohner v. N. Y., N. H. & H. R. Co. (C. C. A. 2d) 188 F. 59; and Penn. R. Co. v. Miller (C. C. A. 3d) 99 F. 529.

[1, 2] In the light of these authorities, we think that the question as to whether the plaintiff was guilty of contributory negligence was clearly a question for the jury. As said by Mr. Justice Lamar, it is only where the facts are such that all reasonable men must draw the same conclusion from them that the question becomes one for the court. Here the defendant was clearly guilty of gross negligence which resulted in plaintiff's injury. Whether the plaintiff was guilty of contributory negligence was a question as to which reasonable men might differ and have differed. To direct a verdict against the plaintiff under such circumstances would be to deny him the right to a trial by jury which is guaranteed by the Constitution.

Plaintiff urges, as an additional ground of his right to go to the jury, that, irrespective of the question of his negligence, the negligence of defendant was the proximate cause of his injury under the doctrine of the last clear chance, basing this contention upon the fact that his automobile was pushed up the track 30 or 40 feet by the advancing cars before he sustained his injury, and that, according to the evidence, the cars could have been stopped within 15 or 20 feet. He contends that, if those in charge of the cars had exercised due care to stop them when his danger was apparent, his injury could have been avoided. It is not necessary that we pass upon this point, however, as upon the grounds stated we think that the case was properly submitted to the jury.

Defendant relies upon an opinion of the learned judge below, in which, while following our former opinion as the law of the case, he dissents from our conclusions and calls attention to a recent decision of the Supreme Court of Appeals of West Virginia and to certain observations which he had made on the question of light or darkness presented in the case. After carefully examining his opinion with that respect to which any expression from him is entitled, we do not think that there was any error in our former opinion or any reason to change the conclusion at which we there arrived.

[3] In the case of Robertson v. Monongahela Power & Railway Co., 99 W. Va. 356, 128 S. E. 829, cited by him, the injured party was driving an automobile in the daytime, and was struck at a crossing by an electric car. It appeared that his view of the track was obstructed by a hill, and that he could not see the approaching car until he was within 30 feet of the track, that he was traveling at such a rate of speed that he was unable to stop before reaching the crossing, and that, upon applying his brakes, he skidded and collided with the car. He was held guilty of contributory negligence as a matter of law because, although his vision was obstructed, he did not have his automobile under control so as to be able to stop it in a place of safety when he came to the place where he could get a view of the track in the direction from which the car was approaching. See 99 W. Va. 356, 128 S. E. at 831 and 833. We think that this case was correctly decided, and that

25 F.(2d)—24

it is in harmony with the rule prevailing in this circuit in the federal courts; but we fail to see what application it has to the facts of the case at bar. Plaintiff here was not driving his car so fast as not to be able to stop it in a place of safety. He did not try to stop it, and, if he is to be believed, he did not try to do so because he had looked in the direction from which the cars were coming and did not see them. The Robertson Case correctly lays down the law as to the duty to stop and look and as to the caution to be exercised when the view of the track is obstructed, but here there was no obstruction. Plaintiff's testimony, which we must accept, is that he looked in plenty of time but did not see the approaching cars. His evidence justifies the conclusion that he did not see them because of the gathering darkness and the absence of proper lights on the leading car.

[4] The learned judge records in his opinion his observations as to light and darkness made at Charleston, W. Va., on April 3, 1927, two years after plaintiff's injury occurred. Even if we had the power to review the facts, which we have not, we would not be justified in ignoring the sworn testimony of witnesses as to the conditions prevailing at the time of the collision and accepting in lieu thereof observations made at a different place two years afterwards. But there is an even stronger reason why we cannot consider these observations of the judge as bearing upon the disputed questions of fact involved in the case; and the reason is that, under the Constitution, plaintiff is entitled to have such questions settled by the verdict of a jury and not by the observations of the judge, however great our respect for his wisdom and the accuracy of his observations.

For the reasons stated, the judgment of the District Court is affirmed.

Affirmed.