# BALTIMORE & OHIO RAILROAD COMPANY v. GRIFFITH.

### ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

No. 53.   Argued October 18, 1895. — Decided November 18, 1895.

When the judgment actually rendered in the court below was for an amount giving this court jurisdiction, which amount was reached by adding to a verdict for $5000, interest from the time of the verdict to the time of the entry of the judgment in a district where the local state law does not permit that to be done, and the plaintiff below, although excepting to the allowance of interest, and to the refusal of the court below to permit a remittitur, brings no writ of error to correct the alleged error, this court cannot dismiss a writ of error brought by the defendant to review other rulings in the case.

In an action against a railway company to recover damages for injuries caused by one of its trains striking a wagon in which the plaintiff and another woman were seated as it was crossing the track on a public highway at grade, the negligence of the defendant having been established, there was further evidence tending to show that the women were driving slowly and with a safe horse; that the train was several minutes behind time; that as they approached the low place at which a train could be seen if one were there, they stopped to look and listen, but neither saw nor heard anything; that after stopping they started driving slowly up the hill to a point at the top between forty and fifty yards from the track, where the slope commenced, and there they stopped again and listened, but heard nothing; they then drove slowly down the hill, both listening all the time, without talking, and heard nothing; and that just as they got to a cut and the horse had his feet on the nearest rail, the train came around a curve and the collision occurred. *Held,* that the question whether there was contributory negligence on the part of the plaintiff was properly submitted to the jury for determination.

THIS was an action brought by Emma Griffith in the Court of Common Pleas of Licking County, Ohio, against the Baltimore and Ohio Railroad Company, to recover for injuries received on August 1, 1888, by the collision of a train of that company with the vehicle in which plaintiff was then being conveyed. The cause was removed on the petition of the company into the Circuit Court of the United States for the Southern District of Ohio, where it was tried, and resulted in

a verdict in favor of the plaintiff for five thousand dollars. A motion for a new trial was made and overruled and judgment entered on the verdict, with interest added, to review which this writ of error was sued out. The charge to the jury by Sage, J., and his opinion on the motion for new trial are reported, 44 Fed. Rep. 574, 582.

The following errors assigned were relied on in the brief for plaintiff in error: "Sixth. The said court erred in refusing to give the ninth charge asked by the plaintiff in error. Seventh. The court erred in refusing to give the tenth charge asked by the plaintiff in error. Tenth. The court erred in overruling the motion of the plaintiff in error for a new trial. Eleventh. Upon the whole record, judgment should have been rendered in said cause in favor of the plaintiff in error and against the defendant in error, instead of the judgment which was rendered."

The instructions thus referred to were as follows: "9. The testimony in this case shows that the plaintiff was guilty of negligence contributing to her injury. Such being the fact she is not entitled to recover and your verdict must be for the defendant.

"10. It was the duty of the plaintiff to stop before driving on this railroad track and allow the train to pass before she attempted to cross, and if she failed so to do and was thereby injured she cannot recover in this case."

*Mr. John K. Cowen,* (with whom was *Mr. Hugh L. Bond, Jr.,* on the brief,) for plaintiff in error, contended that, on the undisputed evidence in the case, the defendant in error was guilty of contributory negligence in law, citing: *Horn* v. *Baltimore & Ohio Railroad,* 6 U. S. App. 381; *Cleveland, Columbus &c. Railroad* v. *Elliott,* 28 Ohio St. 340; *Pennsylvania Company* v. *Rathgeb,* 32 Ohio St. 66; *Baltimore & Ohio Railroad* v. *Whitacre,* 35 Ohio St. 627; *Improvement Co.* v. *Munson,* 14 Wall. 442; *Pleasants* v. *Fant,* 22 Wall. 116; *Schofield* v. *Ch. Mil. & St. Paul Railway,* 114 U. S. 615; *Artz* v. *Chicago, Rock Island &c. Railroad,* 34 Iowa, 153; *Pennsylvania Railroad* v. *Beale,* 73 Penn. St. 504; *Rhoades* v. *Chicago & Grand Trunk Railway,* 58 Michigan, 263;

*Schæfert* v. *Chicago Milwaukee &c. Railway*, 62 Iowa, 624 ; *Turner* v. *Hannibal & St. Joseph Railroad*, 74 Missouri, 602 ; *Gorton* v. *Erie Railway*, 45 N. Y. 660 ; *Delaware & Lackawanna Railroad* v. *Toffey*, 38 N. J. L. 525.

*Mr. Samuel M. Hunter* for defendant in error.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

The verdict was returned June 11, and the motion for a new trial was overruled and judgment entered on the verdict, December 12, 1890. The Circuit Court gave interest on the verdict and rendered judgment for $5154.17 and costs. Plaintiff's counsel excepted to the allowance of interest and also to the refusal of the court to permit a remittitur. Conceding that it is ordinarily within the discretion of the court below to permit or to deny a remittitur, *Pacific Company* v. *O'Connor*, 128 U. S. 394, and cases cited, it is argued here that interest was not allowable on verdicts under the local law ; that in view of section 966 of the Revised Statutes, the judgment was improperly increased by the inclusion thereof, *Mass. Benefit Association* v. *Miles*, 137 U. S. 689 ; and that therefore the writ of error should be dismissed for want of jurisdiction. But if the Circuit Court committed error in this regard, plaintiff below brought no writ of error to correct it, and the question is not open to examination on this record. As the judgment actually rendered was for an amount which gives us jurisdiction, we cannot dismiss the writ on the ground that it should have been for less.

The contention of plaintiff in error is that on the undisputed evidence in the case defendant in error was guilty of contributory negligence in law, and that the court erred in refusing to direct a verdict accordingly.

This renders it necessary to make a brief reference to the evidence.

The plaintiff was riding with her mother in a phaeton buggy from their home in the country to Newark, Ohio, the

mother driving. About four miles south from Newark it was necessary to cross the track of the railroad at a place called Locust Grove crossing, and it was there that the injury was inflicted. The railroad ran nearly north and south in a cut through a small hill, and the highway crossed it at right angles, approaching the crossing through the same hill. The track from the south came to the crossing on a curve of four degrees through the cut, which was from twelve to eighteen feet deep, and the slope of the cut was about forty-five degrees. The bottom of the railroad cut was fifteen feet wide, and the highway as it came down to the track was about sixteen feet wide, though there was some conflict of evidence in regard to it. The train was coming from the south and the buggy was coming from the west. The field on the west of the track and on the south of the highway for a considerable number of feet and up to the crossing was covered with growing corn over ten feet high, so that by reason of the cut and the corn there was no view of the track by a person coming from the west on the highway until he got down into the railway cut. A stream called Hog Run flowed westerly under the track at the bridge of the railroad, 2430 feet south of the crossing, and, after making a curve northerly, passed under a county bridge on the highway in question. The highway from the county bridge ran easterly until about three hundred feet from the crossing, and thence due east to the crossing and after leaving that bridge went by a low place from which the train could be seen coming from the south, until it ran into the cut which commenced about six hundred feet south of the crossing and on a curve to it. The highway proceeding towards the crossing passed up the hill into the cut, and then there was no view of the railroad whatever to the south on account of the highway being cut down and the growing corn on that side. The highway was graded down, leaving a bank on both sides, the descent being gradual, and the highway cut deepening until it reached the place where it crossed at the railroad level at the bottom of the cut. Just as the horse and buggy reached the west rail, a passenger train, going at the rate of forty to forty-five miles an hour, and giving, as alleged, no

signals of its approach to the crossing, struck the horse in the neck, wrecked the buggy, knocked the plaintiff about forty feet, and inflicted permanent injuries, the mother just before the stroke doing all she could to pull the horse to the left, across the highway, to get it out of the way.

It seems to be conceded, and properly, that the jury were justified in finding that the railroad company was guilty of negligence. The case stated in the complaint was on the common law liability of defendant for failure to give signals, but the statutes of Ohio may be referred to as showing what constituted negligence in that regard.   And they provided :

" Sec. 3336.   Every company shall have attached to each locomotive engine passing upon its road, a bell of the ordinary size in use on such engines, and a steam whistle ; and the engineer or person in charge of an engine in motion, and approaching a turnpike, highway, or town crossing, upon the same level therewith, and in like manner when the road crosses any other travelled place, by bridge or otherwise, shall sound such whistle at a distance of at least eighty and not further than one hundred rods from the place of such crossing ; and ring such bell continuously until the engine passes such road crossing ; but the provisions of this section shall not interfere with the proper observance of any ordinance passed by any city or village council regulating the management of railroad locomotives and steam whistles thereon, within the limits of such city or village.

" Sec. 3337.   Every engineer or person in charge of any such engine who fails to comply with the provisions of the preceding section shall be personally liable to a penalty of not less than fifty nor more than one hundred dollars, to be recovered by civil action, at the suit of the State, in the court of common pleas of any county wherein any such crossing is ; and the company in whose employ such engineer or person in charge of an engine is, as well as the person himself, shall be liable in damages to any person or company injured in person or property by such neglect or act of such engineer or person." 1 Rev. Stat. Ohio, 960.

There was evidence that no bell was rung, and that the

engine whistled, if at all, at the railroad bridge, almost half a mile from the crossing.

The jury were warranted in finding that no sufficient warning was given of the approach of the train, which was running at the speed of fifty-eight to sixty-six feet a second, and that the collision was caused by the negligence of those in charge of the train. *Cleveland, Columbus &c. Railroad* v. *Crawford*, 24 Ohio St. 631.

It was held in *Cleveland, Columbus, Cincinnati & Indianapolis Railroad* v. *Elliott*, 28 Ohio St. 340, that the emission to ring the bell or sound the whistle at public crossings is not of itself sufficient ground to authorize a recovery, if the injured party might, notwithstanding such omission, by the exercise of ordinary care, have avoided the accident. And in *Pennsylvania Company* v. *Rathgeb*, 32 Ohio St. 66, that if all the material facts touching alleged negligence of the plaintiff be undisputed, or be found by the jury, and admit of no rational inference but that of negligence, in such case the question of contributory negligence becomes a matter of law merely, and the court should so charge the jury. But these were cases in which the court was of opinion that the omission to give the ordinary, signals by bell or whistle, as in itself it did not absolve the plaintiff from the necessity of exercising ordinary care, did not furnish sufficient ground for recovery, because by due diligence in the use of ordinary precautions by the person injured, the consequence of the defendant's negligence might have been avoided.

In *Continental Improvement Co.* v. *Stead*, 95 U. S. 161, 164, which was a case of collision between a train of passenger cars of the plaintiff in error and the wagon of the defendant in error, Mr. Justice Bradley, speaking for the court, stated the duties and obligations resting upon travellers and railroad companies thus:

"If a railroad crosses a common road on the same level, those travelling on either have a legal right to pass over the point of crossing, and to require due care on the part of those travelling on the other, to avoid a collision. Of course, these mutual rights have respect to other relative rights subsist-

ing between the parties. From the character and momentum of a railroad train, and the requirements of public travel by means thereof, it cannot be expected that it shall stop and give precedence to an approaching wagon to make the crossing first ; it is the duty of the wagon to wait for the train. The train has the preference and right of way. But it is bound to give due warning of its approach, so that the wagon may stop and allow it to pass, and to use every exertion to stop if the wagon is inevitably in the way. Such warning must be reasonable and timely. But what is reasonable and timely warning may depend on many circumstances. It cannot be such, if the speed of the train be so great as to render it unavailing. The explosion of a cannon may be said to be a warning of the coming shot ; but the velocity of the latter generally outstrips the warning. The speed of a train at a crossing should not be so great as to render unavailing the warning of the whistle and bell ; and this caution is especially applicable when their sound is obstructed by winds and other noises, and when intervening objects prevent those who are approaching the railroad from seeing a coming train. In such cases, if an unslackened speed is desirable, watchmen should be stationed at the crossing.

"On the other hand, those who are crossing a railroad track are bound to exercise ordinary care and diligence to ascertain whether a train is approaching. They have, indeed, the greatest incentives to caution, for their lives are in imminent danger if collision happen ; and hence it will not be presumed, without evidence, that they do not exercise proper care in a particular case. But notwithstanding the hazard, the infirmity of the human mind in ordinary men is such that they often do manifest a degree of negligence and temerity entirely inconsistent with the care and prudence which is required of them, such, — namely, as an ordinarily prudent man would exercise under the circumstances. When such is the case, they cannot obtain reparation for their injuries, even though the railroad company be in fault. . . .

"For, conceding that the railway train has the right of precedence of crossing, the parties are still on equal terms as to the exercise of care and diligence in regard to their relative

duties.   The right of precedence referred to does not impose upon the wagon the whole duty of avoiding a collision.   It is accompanied with, and conditioned upon, the duty of the train .to give due and timely warning of its approach.   The duty of the wagon to yield precedence is based upon this condition. Both parties are charged with the mutual duty of keeping a careful lookout for danger; and the degree of diligence to be exercised on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring fairly to perform his duty.   .  .  .

" The mistake of the defendant's counsel consists in seeking to impose on the wagon too exclusively the duty of avoiding , collision, and to. relieve the train too entirely from responsibility in the matter.   Railway · companies cannot expect this immunity so long as their tracks cross the highways of the country upon the same level.   The people have the same right to travel on the ordinary highways as the railroad companies have to run trains on the railroads."   And see *Delaware, Lackawanna &c. Railroad* v. *Converse*, 139 U. S. 469, 472.

: Tested by these principles, we think the Circuit Court did not err in leaving the case to the jury.

There was evidence tending to show that these women were driving slowly and with a safe horse; that the train was several minutes behind time; that as they approached the low place at which a train could be seen if one were there, they stopped to look and listen, but neither saw nor heard anything; that after stopping they started driving slowly up the , hill to a point at the top between forty and fifty yards from the track, where the slope commenced, and there they stopped again and listened, but heard nothing; they then drove slowly down the hill, both listening all the time, without talking, and heard nothing; and that just as they got to the cut and the horse had his feet on the nearest rail, the train came around the curve and the collision occurred.

Since the absence of any fault on the part of a plaintiff may be inferred from circumstances, and the disposition of persons to take. care of themselves and to keep out of difficulty may \ properly be taken into consideration, *Railroad Company* v.

*Gladmon,* 15 Wall. 401, it is impossible to hold in the light of this evidence, as matter of law, that the conduct of plaintiff was such as to defeat a recovery. The rule was thus expounded by Mr. Justice Lamar in *Grand Trunk Railway* v. *Ives,* 144 U. S. 408, 417: "There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case, may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court."

*Judgment affirmed.*