**UNITED STATES DIRECTOR GENERAL OF RAILROADS v. ZANZIN-
GER.**

(Circuit Court of Appeals, Fourth Circuit.    November 16, 1920.)

No. 1801.

1. Railroads ⬦⟳301—Rights of traveler's and trains at crossings are recip-
rocal.

The obligations, rights, and duties of travelers on a highway and
of railroad trains to the use of crossings is mutual and reciprocal, and
no greater care is required of one than of the other.

2. Railroads ⬦⟳346 (5)—Traveler entitled to presumption of due care.

The presumption is in favor of due care by a traveler at a railroad
crossing; his safety being involved.

3. Railroads ⬦⟳312 (1)—Dominant right at crossing conditioned on duty
to give warning.

While railroad trains have the dominant right to pass at a crossing,
because of the necessity that they should run rapidly, without stopping
at crossings, this preference is conditioned on the duty of the railroad
to give due and timely warning of the approach of its trains.

4. Railroads ⬦⟳330 (3)—Duty of stopping, listening, and looking dependent
on circumstances, including expectation of signal.

Whether a traveler should stop to listen and look at a railroad cross-
ing, and how intently, how constantly, and how often he should listen
and look in the exercise of the prudence of a reasonably careful man,
depends on all the circumstances, and one of such circumstances is his
rightful expectation that the railroad will sound the bell or whistle on
approaching the crossing.

5. Railroads ⬦⟳350 (16)—Sufficiency of looking and listening ordinarily
question for jury.

Whether a traveler on the highway has looked and listened for trains
as a man of ordinary prudence would is generally a question for the
jury.

6. Railroads ⬦⟳332—Standing engine not signal of danger as a matter
of law.

A standing engine, that has given no signal of movement is not such
a signal of danger as to require a traveler as a matter of law to have
it under observation every moment as he approaches a public railroad
crossing.

7. Railroads ⬦⟳350 (22)—Negligence of traveler with view obstructed held
question for jury.

Where a pedestrian's view of a standing engine was obstructed for
25 feet before reaching the railroad track, and he saw the engine stand-
ing 100 feet from the crossing before reaching such obstruction, it was
a question for the jury whether he was negligent in undertaking to cross
after such obstruction of his view, relying upon hearing a signal before
the movement of the engine.

In Error to the District Court of the United States for the Eastern
District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Action by John Zanzinger against the United States Director Gen-
eral of Railroads. Judgment for plaintiff, and defendant brings error.
Affirmed.

Robert M. Hughes, Jr., of Norfolk, Va., and F. M. Rivinus, of
Philadelphia, Pa. (Hughes, Little & Seawell, of Norfolk, Va., on the
brief), for plaintiff in error.

⬦⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

John W. Eggleston, of Norfolk, Va., and W. F. Purdy, of New York City (James M. Gorman, of New York City, Hughes, Vandeventer & Eggleston, of Norfolk, Va., and Macklin, Brown, Purdy & Van Wyck, of New York City, on the brief), for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and SMITH, District Judge.

WOODS, Circuit Judge.   Six tracks of the Norfolk & Western Railroad run along Twenty-Third street in the city of Norfolk, where they intersect at right angles with Parker avenue.   On July 6, 1918, plaintiff, a Russian longshoreman, walking along Parker avenue, was struck as he was about to cross the sixth track by a locomotive and lost both legs.   He recovered judgment in this action for $17,000.

Conceding that there was evidence from which the jury might find the defendant negligent in failing to comply with an ordinance of the city of Norfolk requiring the bell of a locomotive to be rung when approaching a street crossing, defendant asks for a reversal, contending that the District Judge should have directed a verdict on the ground that the evidence showed conclusively contributory negligence of the plaintiff.

The general circumstances of the accident are not in dispute.   Parker avenue, at its intersection with Twenty-Third street, is not paved and is traveled only by pedestrians along well-defined footpaths made by constant use.   The tracks on Twenty-Third street lead into defendant's coal yards, and many trains pass over them every day in both directions.   The tracks of the Virginia Railway & Power Company run above Twenty-Third street on stanchions set in the street.   Plaintiff was walking in the path on the east side of the street leading from his home north of the railroad tracks to his place of business south of the tracks.   When he reached the northernmost track, after two moving trains had passed, he saw an engine standing and headed east on the southernmost or sixth track at the switch west of him, about 100 feet from the place of the accident.   He had clear view of the engine until he reached the fifth track, about 60 feet from the first track crossed by him.   From the fifth to the sixth track, a distance of 25 feet, his view was obstructed by the stanchions.

The plaintiff testified that he saw the engine standing still when he crossed the fifth track; that from that point his view of it was so cut off by the stanchions that he could not see it; that he listened, but did not hear the engine, and did not know it was moving until too late to escape.   The finding of the jury that the defendant's engineer and fireman were guilty of one or both of two acts of negligence, failing to ring the bell of the locomotive and failing to keep a lookout on approaching the street, has abundant support in the testimony.

The defendant relies upon the photographs taken after the accident as showing conclusively that there was enough open view between the stanchions for the plaintiff to have seen the engine, if he had looked while walking from track 5 to track 6.   The argument is that plaintiff's statement that he could not see the engine while walking by the stanchions was demonstrated to be untrue by the photographs, and

therefore that the conclusion is inevitable, either that the plaintiff did not look at that point or that he saw the engine moving toward the crossing and took no heed of it.

Defendant also contends that plaintiff's testimony that he listened and did not hear the approaching engine is untrue, because if he had listened so near the engine he must have heard the noise of its movement and disregarded it.

We think the photographs do prove that it was possible for the plaintiff, if standing still, to see the engine by close and intent observation through the interstices. They also show the probability, but we cannot say the certainty, that he could have seen the engine while walking at an ordinary gait, although very close to the stanchions. It is highly probable, also, that the plaintiff could have heard the approaching engine, if listening intently for its approach.

But the degree of intentness of looking and listening requisite to constitute due care depends upon circumstances. For example, a man of ordinary prudence, in crossing a straight railroad track at night, would hardly make more than one casual observation each way, because that would be sufficient for him to see the headlight which he would assume an approaching train to show. Again, a man of ordinary prudence would hardly hesitate to go over a crossing near to a passenger train stopped at a station, relying upon his attention being arrested by the invariable bell signal of starting. The presumption that an engine of a standing train will give warning before going over a crossing is greater than if the train were running, because a moving train, if seen, is itself a warning.

The great weight of the leading and best-considered authorities recognizes these rules:

[1] The obligations, rights, and duties of travelers on the highway and railroad trains to the use of crossings are mutual and reciprocal, and no greater care is required of one than of the other.

[2] The presumption is in favor of due care by the traveler, because his safety is involved.

[3] While railroad trains have the dominant right to pass at a crossing of the public highway, because of the necessity that they should run rapidly without stopping at crossings, this preference is conditioned upon the duty of the railroad to give due and timely warning of the approach of its trains.

[4] The question whether a traveler should stop to listen and look, how intently and how constantly, or how often he should listen and look in the exercise of the prudence of a reasonably careful man, depends upon all the circumstances; and one of the circumstances is the rightful expectation of the traveler that the railroad will perform the duty required by law and by ordinary care of warning him by sounding a locomotive bell or whistle on approaching a crossing.

[5] Whether a traveler on the highway has looked and listened as a man of ordinary prudence would is generally a question for the jury.

In the application of these rules to particular facts, courts have often held the traveler precluded from recovery, on the ground that all reasonable men would agree that he did not look and listen as due

care, in view of the danger, required. Types of these cases are Neininger v. Cowan et al., 101 Fed. 787, 42 C. C. A. 20, Dernberger v. Baltimore & O. R. Co., 243 Fed. 21, 155 C. C. A. 551, decided by this court, Chicago, R. I. & P. R. Co. v. Houston, 95 U. S. 697, 24 L. Ed. 542, and numerous like cases decided under the Houston Case, cited in Rose's Notes.

In many cases where the evidence of the negligence of the traveler was at least as strong as that of the plaintiff, Zanzinger, and in some of them much stronger, the Supreme Court, in applying the rules above stated, has held the question of the negligence of the traveler to be one of fact for the jury. Continental Improvement Co. v. Stead, 95 U. S. 161, 24 L. Ed. 403; Grand Trunk Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Richmond & Danville Railroad Co. v. Powers, 149 U. S. 43, 13 Sup. Ct. 748, 37 L. Ed. 642; Baltimore & Ohio Railroad Co. v. Griffith, 159 U. S. 603, 16 Sup. Ct. 105, 40 L. Ed. 274; Texas & Pacific Railway Co. v. Cody, 166 U. S. 606, 17 Sup. Ct. 703, 41 L. Ed. 1132; Baltimore & Potomac Railroad Co. v. Landrigan, 191 U. S. 461, 24 Sup. Ct. 137, 48 L. Ed. 262; Flannelly v. Delaware & Hudson Co., 225 U. S. 597, 32 Sup. Ct. 783, 56 L. Ed. 1221, 44 L. R. A. (N. S.) 154; Texas & Pacific Railway Co. v. Gentry, 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. Ed. 186.

[6, 7] A standing engine, that has given no signal of movement, is not such a signal of danger that a court should hold as a matter of law that a traveler must have it under observation every moment as he approaches a public crossing. Surely all reasonable men would not agree that a reasonably prudent man, seeing an engine at rest, with no sign of movement, might not with a sense of safety undertake to go over a crossing after an obstruction of his view of only 25 feet, relying upon hearing a signal before the movement of the engine.

Affirmed.