## WAID v. CHESAPEAKE & O. RY. CO.

(Circuit Court of Appeals, Fourth Circuit. June 8, 1926.)

No. 2504.

**1. Courts ⚙️406(1).**

In passing on questions raised by exceptions to directed verdict for defendant, Circuit Court of Appeals must view testimony in light most favorable to plaintiff and draw every reasonable inference therefrom.

**2. Railroads ⚙️312(11).**

Blowing whistle 700 feet from crossing *held* not sufficient notice under Barnes' Code W. Va. 1923, c. 54, § 61, of approach of cars pushed by engine and 360 feet nearer crossing.

**3. Railroads ⚙️312(11).**

Failure to have lights on front end of cars being pushed by locomotive which had headlight *held* evidence of negligence on part of railroad.

**4. Railroads ⚙️310.**

Railroad, in pushing or backing cars over crossing, must exercise special care to avoid injuring persons lawfully on or approaching track.

**5. Railroads ⚙️350(8).**

Evidence that cars were being backed over crossing after dark, without lights and without signals, *held* for jury on question of negligence.

**6. Railroads ⚙️350(16)—Contributory negligence of automobile driver struck by train held question for jury.**

Evidence *held* for jury on question of contributory negligence of automobile driver struck by cars being pushed over crossing, when taken in connection with presumption that plaintiff exercised due care.

**7. Courts ⚙️406(1).**

Circuit Court of Appeals has no power on writ of error to weigh conflicting evidence or pass on credibility of witnesses.

**8. Railroads ⚙️347(1).**

Rule of railroad that, when shifting over crossing not protected by watchman, member of crew, must protect it, *held* properly excluded in action for injuries from cars transferred as unit.

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; George W. McClintic, Judge.

Action by John Waid, an infant, by F. M. Draney, his next friend, against the Chesapeake & Ohio Railway Company. Judgment for defendant, and plaintiff brings error. Reversed, and remanded for a new trial.

Ashton File, of Beckley, W. Va., and A. G. Fox, of Bluefield, W. Va. (Joseph M. Sanders, of Welch, W. Va., and W. W. Goldsmith, of Beckley, W. Va., on brief), for plaintiff in error.

Douglas W. Brown, of Huntington, W. Va. (C. W. Strickling, of Huntington, W. Va., and C. P. Nash, Jr., of Alderson, W. Va., on brief), for defendant in error.

Before WADDILL and PARKER, Circuit Judges, and COCHRAN, District Judge.

PARKER, Circuit Judge. This action was instituted by the plaintiff in error, to recover damages for injuries sustained when an automobile which he was driving was struck by a train of cars of defendant in error, at a crossing in East Raleigh, W. Va. The parties will be referred to in accordance with the positions which they occupied in the court below. At the conclusion of the evidence, the court directed a verdict in favor of the defendant; and the principal point presented by the exceptions is the correctness of this ruling.

The collision in which plaintiff was in-

jured occurred between 7:10 and 7:17 on the evening of April 3, 1925. The crossing in question is where the main highway between Beckley and Bluefield crosses at grade the main line of the Piney Branch of the defendant between Raleigh and Prince. At the crossing, the highway runs approximately north and south, and the railway track, east and west. East of the crossing, the track curves in a northeasterly direction; and at a point 964 feet distant therefrom it is intersected by a spur track leading to the plant of the Blue Jay Lumber Company. The cars which struck plaintiff approached the crossing from the east. There were nine cars; and they were being pushed by a locomotive, which had picked them up on the Blue Jay siding, and was pushing them to the yard west of the crossing. The headlight of the locomotive was burning, but the light therefrom was entirely obstructed by a box car placed immediately in front of it. There was no light and no signaling device on the leading car.

Plaintiff was struck as he drove onto the crossing from the south. He had previously stopped in front of a service station, about 120 feet south of the crossing, and was driving at the rate of 6 or 8 miles an hour. He testified that, when he passed the corner of a building 70 feet from the track, called the Terminal building, he looked up and down the track and did not see or hear any train coming from either direction; that he then started across the track, but, just as the front wheels of his automobile reached the first rail, he was struck by the approaching cars; that the leading car shoved the automobile ahead of it up the track; and that he found himself lying beneath the wreck of his automobile, with his left foot off, his right leg torn and scarred, and wounds on various parts of his body. He further testified that it was so dark at the time of the collision that he could not see the approaching cars and did not see them until he was struck; that there was no light on the cars and the whistle was not blown, the bell rung, or any other warning of any kind given of their approach; that there was an engine standing on a siding just west of the crossing with its headlight burning and the light therefrom shining in a southeasterly direction against the Terminal building; that he looked at this engine long enough to know that it was standing still; and that to pass over the crossing required attention, as it was made of narrow boards "and you had to hit it just right or the wheels would miss it and go down between the rails."

There was evidence on the part of the defendant to the effect that it was not dark; that a train could have been seen for a distance of from 300 to 600 feet; that the whistle was blown at Beaver creek bridge, about 700 feet from the crossing; and that the conductor was riding on the bumper of the forward car, and attempted to warn plaintiff by hallooing and waiving to him. One witness, who testified to seeing plaintiff when he was several feet from the crossing, stated that he did not look to the right at that time.

The learned trial judge seems to have directed a verdict for defendant on the theory that it was light enough for plaintiff to have seen the approaching cars, and that he was guilty of contributory negligence in driving on the track in front of them. On the question as to how light or dark it was, the evidence is conflicting. Plaintiff testified that it was dark, and that he looked and did not see the cars, although in a position where he could have seen them had it been light. The witness Starr testified that it was not "plumb dark" but was getting dusk. Two other witnesses, who drove over the crossing and up to the service station, 120 feet away, just as plaintiff was leaving, testified that they looked down the track in the direction from which the cars were coming and could not see them. It was some time after sunset, and the crossing was in a locality "entirely surrounded by mountains except for the small valley going up Beaver creek." That it was at least beginning to be dark is a fair inference from the circumstances in evidence to the effect that the locomotive pushing the cars and the one standing on the siding had their headlights burning; that the flagman on the cars (who was not on the leading car, but between the third and fourth cars on the opposite side of the train from plaintiff) had a lighted lantern; that the lights of plaintiff's car and of the car which drove over the crossing shortly beforehand were burning; that the lights were burning in a nearby restaurant; and that it was necessary to use a light when searching for plaintiff's foot along the track shortly after the collision.

[1] Two questions arise in considering the exception taken to the direction of the verdict: First, whether there was sufficient evidence of negligence on the part of the defendant to go to the jury on that issue; and, second, whether contributory negligence was so clearly established that reasonable men could draw no other conclusion from the testimony. In passing upon the questions, the law requires that we view the testimony in

the light most favorable to the plaintiff, and that we draw every inference therefrom that can reasonably be drawn in his favor. Atlantic Coast Line R. Co. v. McLeod (C. C. A. 4th) 11 F.(2d) 22; Mims v. Reid (C. C. A. 4th) 286 F. 900; Union Pac. R. Co. v. Huxoll, 245 U. S. 535, 38 S. Ct. 187, 62 L. Ed. 455; Chicago, R. I. & P. R. Co. v. Sharp (C. C. A. 8th) 63 F. 532, 11 C. C. A. 337. And, when the evidence is considered in the light of this rule, it is clear that both questions must be answered against the defendant.

It is provided by statute in West Virginia that "a bell or steam whistle shall be placed on each locomotive engine, which shall be rung or whistled by the engineer or fireman, at the distance of at least sixty rods from the place where the railroad crosses any public street or highway, and be kept ringing or whistling for a time sufficient to give due notice of the approach of such train before such street or highway is reached. * * *" Barnes' Code of West Virginia, 1923, c. 54, § 61.

[2-5] Plaintiff testified that he heard no signals whatever from bell or whistle, and heard no other warning signals. Several witnesses near the crossing at the time testified to the same effect. The testimony of the defendant is that the whistle was blown when the engine was near the bridge, 700 feet from the crossing; but it must be remembered that the forward car was 360 feet nearer the crossing than the engine, and, under these circumstances, it is manifest that this blowing of the whistle was not sufficient notice of the approach of the cars within the meaning of the statute. Furthermore, although according to plaintiff's evidence it was dark and the headlight of defendant's locomotive had been lighted, there was no light on the forward end of the cars, and this, we think, was clearly evidence of negligence. The pushing or backing of cars over a crossing is an act especially dangerous, and a railroad company is bound to exercise special care, when doing so, to avoid injuring persons lawfully on or approaching the track. When, as here, there is evidence tending to show that cars were being backed in the darkness, or in the dusk of approaching darkness, without lights being displayed on the forward car, and without signals or warnings of any kind being given, it is clear that the issue of negligence should be submitted to the jury. Bowles v. Chesapeake & O. R. Co., 61 W. Va. 272, 57 S. E. 131; Chicago, R. I. & P. R. Co. v. Sharp (C. C. A. 8th) 63 F. 532, 11 C. C. A. 337; 33 Cyc. 954.

Nor do we think that the evidence as to contributory negligence was of such a character as to warrant the direction of a verdict. The rules applicable to this phase of the case were admirably summarized by the late Judge Woods, in the well-considered case of United States Director General of Railroads v. Zanzinger (C. C. A. 4th) 269 F. 552, as follows:

"(1) The obligations, rights, and duties of travelers on the highway and railroad trains to the use of crossings are mutual and reciprocal, and no greater care is required of one than of the other.

"(2) The presumption is in favor of due care by the traveler, because his safety is involved.

"(3) While railroad trains have the dominant right to pass at a crossing of the public highway, because of the necessity that they should run rapidly without stopping at crossings, this preference is conditioned upon the duty of the railroad to give due and timely warning of the approach of its trains.

"(4) The question whether a traveler should stop to listen and look, how intently and how constantly, or how often he should listen and look in the exercise of the prudence of a reasonably careful man, depends upon all the circumstances; and one of the circumstances is the rightful expectation of the traveler that the railroad will perform the duty required by law and by ordinary care of warning him by sounding a locomotive bell or whistle on approaching a crossing.

"(5) Whether a traveler on the highway has looked and listened as a man of ordinary prudence would is generally a question for the jury."

[6] Under these rules, the case on the issue of contributory negligence was one for the jury. When the evidence is viewed in the light most favorable to plaintiff, it is not a case where one, with nothing to divert his attention or obstruct his vision, has driven on the track in front of an approaching train and been injured because of manifest failure to observe any precaution whatever for his own safety. On the contrary, there was evidence to the effect that plaintiff was driving slowly and cautiously; that he looked down the track and failed to see the approaching cars because of the gathering darkness and the dark background furnished by high mountains; that the warnings were not given and the signal lights displayed upon which he had a reasonable right to rely; that his attention was diverted by the engine standing to the west of the crossing with its head-

light burning; and that he was required to give particular attention to driving his automobile over the defective crossing, which had to be hit "just right" or the wheels "would miss it and go down between the rails." This evidence, when taken in connection with the presumption that the plaintiff exercised due care for his own safety, and with the burden upon the defendant to show the contrary, required that the question as to whether plaintiff exercised the care of a reasonably prudent man under the circumstances be left to the jury for decision.

What was said by Mr. Justice Lamar in Grand Trunk Ry. v. Ives, 144 U. S. 408, 417, 12 S. Ct. 679, 682 (36 L. Ed. 485), quoted with approval by Chief Justice Fuller in Baltimore & O. R. Co. v. Griffith, 159 U. S. 603, 611, 16 S. Ct. 105, 40 L. Ed. 274, and by Mr. Justice Harlan in Texas & P. R. Co. v. Gentry, 163 U. S. 353, 368, 16 S. Ct. 1104, 41 L. Ed. 186, is applicable here:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case, may under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court."

[7] A large number of witnesses testified in contradiction of plaintiff as to the fact that it was dark and that the cars could not have been seen by him, and it was urged that the testimony of plaintiff was a "mere scintilla," which should be disregarded. But this court has not the power on writ of error to weigh conflicting evidence or pass upon the credibility of witnesses. As said by Judge Caldwell, speaking for the Circuit Court of Appeals of the Eighth Circuit, in Chicago, R. I. & P. Ry. Co. v. Sharp, supra:

"We are pressed to weigh conflicting evidence, pass upon the veracity of the witnesses, and determine the case according to what we think is the weight of evidence appearing in the record. To do these things would be a flagrant invasion of the functions of the jury, and a denial to the plaintiff of his constitutional right to have the facts of his case tried by a jury."

[8] One other exception requires notice, as the matter embraced therein will probably arise again upon the trial of the case. Plaintiff offered in evidence rule 103 of the company, which provides:

"When shifting over public crossings at grade, not protected by a watchman, a member of the crew must protect the crossing."

The rule was properly excluded, as it had no application to the operation in question. The cars were not being shifted over the crossing, but were being transferred as a unit from the Blue Jay siding to the yard of the defendant. Louisville & Jeffersonville Bridge Co. v. U. S., 249 U. S. 534, 39 S. Ct. 355, 63 L. Ed. 757; Atlantic Coast Line R. Co. v. Goldsboro, 155 N. C. 356, 71 S. E. 514; Id., 232 U. S. 548, 34 S. Ct. 364, 58 L. Ed. 721.

There was error in directing a verdict for the defendant, and the judgment of the District Court is accordingly reversed, and the case is remanded for a new trial.

Reversed.