**BURCHAM**
v.
**J. P. STEVENS & CO., Inc., et al.**
No. 6659.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 17, 1953.

Decided Jan. 4, 1954.

36

John B. Browder, Richmond, Va., for appellant and cross-appellee.

G. Kenneth Miller, Richmond, Va. (John G. May, Jr., Richmond, Va., on

the brief), for appellees and cross-appellant.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and CHESNUT, District Judge.

PARKER, Chief Judge.

These are cross appeals in a motor vehicle collision case. The plaintiff in the court below was Herman S. Burcham, who was driving one of the motor vehicles involved in the collision, and the defendants were J. P. Stevens & Company, Incorporated, the owner of the other vehicle, and Clifford Dewey Lanier who was driving it. The plaintiff asked damages of the defendants on account of personal injuries sustained in the collision, which he claimed was due to the negligence of the defendants. The defendants denied negligence and claimed that the collision was due to the negligence of plaintiff. The defendant J. P. Stevens & Company filed a cross claim against plaintiff to recover for damages sustained by its motor vehicle in the collision. The case was tried before a jury which returned a verdict for plaintiff in the sum of $7,500 and denied recovery on the cross claim. The trial judge granted a motion of defendants for judgment non obstante veredicto based upon a motion made for a directed verdict at the conclusion of the evidence but denied motion of J. P. Stevens & Company for such a judgment on its cross claim. From judgment entered in accordance with this ruling both plaintiff and J. P. Stevens & Company have appealed.

■■ It is well settled that on a motion for a directed verdict or on motion for judgment n. o. v. based on such motion, the evidence must be considered in the light most favorable to the party against whom the directed verdict or the judgment n. o. v. is asked, that any conflict in evidence must be resolved in his favor and that every conclusion or inference that can be legitimately drawn therefrom in his behalf must be drawn. When this rule is applied here, we think that the case was one for the jury on the plaintiff's claim, as well as on the cross claim of the defendant J. P. Stevens & Company, and that there was error in entering judgment for the defendants in the face of the jury's finding of a verdict in the sum of $7,500 in favor of plaintiff.

There was evidence tending to show that plaintiff was a truck driver of long experience. On the morning of the collision he was driving an empty gasoline tractor-trailer and was proceeding westwardly on highway 360 about four miles east of Amelia, Virginia. It was early in the morning and he was going to a roadside restaurant, known as "Dick's Place", to get his breakfast before driving to Richmond. Dick's Place was on the south side of the highway and, when he arrived opposite it, he drove to the right off of the hard surface and stopped to allow cars which were following him to pass, turning on his signaling device, which indicated by a light and arrow on his left front fender that he was making a left turn. After the cars had passed, he started across the hard surfaced highway, which was 22 feet wide, to Dick's Place on the other side. As he started he looked and saw the tractor-trailer of defendants approaching from the west around a long curve but at a distance of from 700 to 1000 feet. Although it was approaching at a rapid rate of speed, plaintiff thought that he had ample time to get across the highway in safety before it could traverse the intervening distance, and was crossing with both hands upon the wheel and with his attention directed towards Dick's Place, where one or more cars were parked which it was necessary for him to avoid. When the cab of his tractor-trailer had barely gotten off the hard surface, it was struck by the cab of defendants' tractor-trailer, which had swerved to the right to avoid striking his gasoline tank.

Defendants' tractor-trailer was evidently traveling at a high rate of speed, for it left skid marks upon the highway 321 feet long, and, when the evidence is viewed in the light most favor-

able to plaintiff, it appears that plaintiff was going slowly and that defendants' driver should have seen from a distance of 700 to 1000 feet that he was turning and might be heading towards Dick's Place. If defendants' driver had been keeping a proper lookout and had slowed down and brought his tractor-trailer under control at that time, there is no reason why he could not have avoided the collision. Instead of doing this, he first sounded his horn and proceeded some distance before using the full force of his brakes to bring his vehicle to a stop; and it was then too late to avoid the collision.

The questions involved in the case are pure questions of fact,—the rates of speed at which the respective motor vehicles were traveling, whether plaintiff exercised due care in looking for approaching cars before crossing the highway, whether defendants' driver was keeping a proper lookout and whether, in the exercise of ordinary care, he should have seen that plaintiff was in a dangerous situation from which he could not extricate himself in time to avoid the collision. There was conflict in some of the testimony bearing upon the answers to these questions and conflicting inferences could be drawn even where the testimony was not in conflict. With respect to the speed of the respective vehicles, this was a matter as to which not only the credibility but also the judgment of the witnesses had to be considered. With respect to the care required of plaintiff in making the crossing, there were questions as to where plaintiff looked, what he saw and whether he should have looked oftener. With respect to the care exercised by the driver, there were questions as to when he could first have seen plaintiff turning if he had been keeping a proper lookout, what precautions he should have taken to avoid the collision when he saw that plaintiff was turning and whether or not he took such precautions. The case was clearly one in which jury trial was required by express provision of the Seventh Amendment to the Constitution.

■■ The courts are constantly urged in cases of this character to substitute their judgment for that of the jury on questions of fact; and the seductive argument is made that a conclusion of fact which appears to the court to be reasonable is so clear that reasonable men could reach no other. If this sort of reasoning is allowed to prevail, however, it means that the courts are substituting their judgment for that of the jury on fact questions in violation of the constitutional requirement. Where there is a determinative fact in a case which is either admitted or established by evidence so conclusive that reasonable men could entertain no doubt with regard to it, the court should, of course, direct a verdict as a matter of law; but this does not mean that the court should direct a verdict on a weighing of the evidence or on a decision as to what inferences to be drawn therefrom are the more reasonable. Questions of negligence or contributory negligence are ordinarily questions of fact involving the application of the rule of the reasonably prudent man to the facts of the case, and they are not to be decided by applying "rules of thumb" to the evidentiary facts and treating as conclusions of law what are in reality conclusions of fact. As was well said by Mr. Justice Lamar in Grand Trunk Ry. Co. v. Ives, 144 U.S. 408, 417, 12 S.Ct. 679, 36 L.Ed. 485, quoted with approval by Chief Justice Fuller in Baltimore & O. R. Co. v. Griffith, 159 U.S. 603, 611, 16 S.Ct. 105, 40 L.Ed. 274, by Mr. Justice Harlan in Texas & Pac. R. Co. v. Gentry, 163 U.S. 353, 368, 16 S. Ct. 1104, 41 L.Ed. 186, and by this court in Waid v. Chesapeake & O. R. Co., 4 Cir., 14 F.2d 90, 93:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any

and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case, may under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court."

The question of contributory negligence of one crossing a highway is analogous of course to one crossing a railroad track, which is a special sort of a highway of a highly dangerous character; and what was said by Judge Woods of this court in United States Director General of Railroads v. Zanzinger, 4 Cir., 269 F. 552, quoted with approval in Farley v. Norfolk & W. R. Co., 4 Cir., 14 F.2d 93, 96, is pertinent here. Said he:

"The question whether a traveler should stop to listen and look, how intently and how constantly, or how often he should listen and look in the exercise of the prudence of a reasonably careful man, depends upon all the circumstances; * * *. Whether a traveler on the highway has looked and listened as a man of ordinary prudence would is generally a question for the jury."

One of the arguments frequently made in cases of this sort is that the physical facts support the contention of the party moving for the directed verdict and the court is asked to ignore the other testimony in the case because it is argued that the physical facts require that the verdict be directed. Where, however, the physical facts relied on are such matters as speed, vision, ability to stop, etc., which depend on testimony of witnesses, it is clear that what the court is asked to do is to invade the province of the jury and decide the ultimate issues of fact. That these may involve scientific knowledge or the application of the principles of physics or mathematics does not make them any less issues of fact or withdraw them from the province of the jury, as triers of the facts. As said by this court in Travelers' Indemnity Co. v. Parkersburg Iron & Steel Co., 4 Cir., 70 F.2d 63, 64–65:

"The rule is well settled, of course, that evidence contrary to established physical facts has no probative value. U. S. v. Diehl, 4 Cir., 62 F.2d 343; Atlantic Coast Line R. Co. v. McLeod, 4 Cir., 11 F.2d 22. But to justify the ignoring of evidence under this rule the evidence ignored must be utterly at variance with well-established and universally recognized physical laws and therefore inherently impossible. See Wasiota & B. M. R. Co. v. Hall, 167 Ky. 819, 181 S.W. 629; Wolf v. City R. Co., 50 Or. 64, 85 P. 620, 91 P. 460, 15 Ann.Cas. 1181. The rule means merely that courts are not required to stultify themselves by giving serious consideration to what every man knows to be untrue. It does not mean that they must determine for themselves, from the testimony of experts or otherwise, the truths of science which may be involved in cases before them, and ignore testimony that does not coincide with their conclusions. Questions of fact

are questions for the jury; and they do not become questions for the court merely because their solution may require scientific knowledge or expert opinion."

■■ Whether a question is one for the decision of the court or of the jury is a question of federal practice as to which we are governed by federal and not by state decisions. We are bound by state decisions as to the substantive law applicable in a case of this sort, but by federal law, not state law, as to whether a question is for the decision of the judge or the jury under the Seventh Amendment. We think it clear, however, that under the Virginia decisions the questions here involved are jury questions. See Virginia Electric & Power Co. v. Holtz, 162 Va. 665, 174 S.E. 870; Sink v. Masterson, 191 Va. 618, 61 S.E.2d 863, 866. In the case last cited which involved a left turn across a highway in the pathway of an oncoming truck and where there was reliance on the statute relied on here providing that the person making the turn "shall first see that such movement can be made in safety", the court said:

"In the case before us it was for the jury to say whether Masterson complied with the mandate of the statute in both respects—that is, whether under all of the circumstances, before making the turn he exercised ordinary care to see that such movement could be made in safety and gave the required signal. In similar cases we have held that whether, under the particular circumstances, the driver of a car acted as a reasonably prudent person in trying to make a turn across the path of another vehicle is for the jury. Stratton v. Bergman, 169 Va. 249, 192 S.E. 813; Temple v. Ellington, 177 Va. 134, 12 S.E.2d 826; Virginia Stage Lines v. Duff, 185 Va. 592, 39 S.E.2d 634; Smith v.

Clark, supra [187 Va. 181, 46 S.E. 2d 21]."

It is argued that the plaintiff was negligent as matter of law in driving across the solid white line of the highway opposite Dick's Place, because of the terms of section 46-222(5) of the Virginia Code which at that time provided:

"(5) Wherever a highway is marked with double traffic lines consisting of a solid line immediately adjacent to a broken line, no vehicle shall be driven to the left of such line if the solid line is on the right of the broken line".

■■ At the time of the collision the language of the statute did not contain an exception later added permitting a left turn for the purpose of "entering or leaving a public, private or commercial road or entrance"; but we think that the exception was added for purposes of clarification and that it did not change the meaning of the section when reasonably interpreted. The section was included along with other provisions regulating driving in streets or highways "laned" for traffic, the third paragraph of which clearly contemplates driving across lines marking traffic lanes in making lefthand turns. Its manifest purpose was to prevent cars driving on the left side of the road for purposes of passing where there was not sufficient vision ahead to allow the passing to be made in safety in view of the fact that the car being passed was in motion. It was never intended to make it a criminal offense to cross the highway to a filling station or private entrance merely because the highway happened to be "laned" at the point of crossing. There would be no reason for such a law, which would be likely to produce many more dangerous situations than it would prevent.[1] It is elementary, of course, that statutes are to be given a reasonable construction and not one which is absurd.

1. We do not think that Schools v. Walker, 187 Va. 619, 47 S.E.2d 418, or Owen v. Dixon, 162 Va. 601, 175 S.E. 41, which dealt with different fact situations, are authority to the contrary.

Even if the statute here be given the construction for which plaintiff contends and it be held that plaintiff was guilty of negligence as a matter of law in crossing the solid line, it was still a question for the jury whether, notwithstanding such negligence, the collision could have been avoided if defendants' driver had been keeping a proper lookout and had exercised proper care when plaintiff's dangerous situation became apparent.

For the reasons stated, we think the evidence was sufficient to take the case to the jury both with respect to plaintiff's case and the cross claim of J. P. Stevens & Company and that there was error in entering judgment for the defendants on the claim of plaintiff. The judgment appealed from will accordingly be reversed on plaintiff's appeal and affirmed on the cross appeal of J. P. Stevens & Company and the case will be remanded with direction to enter judgment in accordance with the verdict of the jury.

Affirmed in part, reversed in part and remanded with directions.